UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

THOMAS M. SEARS AND BRENDA L.
STEALY SEARS,

               Pro Se Plaintiffs,

     vs.

COUNTY OF MONTEREY, a County
formed within the State of California 1850, as
a for profit corporation; et al.,

               Defendants.

Case No: C 11-01876 SBA

**ORDER GRANTING
DEFENDANTS' MOTIONS TO
DISMISS WITH PARTIAL LEAVE
TO AMEND**

Dkt. 53, 56, 61, 64 and 91

       Plaintiffs Thomas M. Sears ("Sears") and his wife, Brenda L. Sealy-Sears ("Sealy-Sears"), bring the instant pro se action against twenty-five entities and individuals to challenge Sears' termination by Defendants Housing Authority of the County of Monterey ("HACM") and the Monterey County Housing Authority Development Corporation ("HDC") in 2010. The parties are presently before the Court on various motions to dismiss, filed by five groups of Defendants (collectively "Moving Defendants"). Dkt. 53, 56, 61, 64 and 91. Having read and considered the papers submitted and the record in this action, and being fully informed, the Court hereby GRANTS the Moving Defendants' respective motions to dismiss. Pursuant to Federal Rule of Civil Procedure 78(b), the Court adjudicates the instant motion without oral argument.

I.      **BACKGROUND**

    A.      FACTUAL SUMMARY

        The following summary is based on the allegations of the Complaint and attached affidavit, which are taken as true for purposes of the instant motions.[1]  Sears alleges that he is a 67 year-old engineer with extensive experience in managing large scale construction projects.  Compl. Ex. ("Aff.") ¶ 5-8, Dkt. 1-1.  On October 23, 2006, Sears was hired by HACM as a professional engineer in the position of Senior Construction Manager and Deputy Director of Development.  Compl. ¶ 21, Dkt. 1.

        In June 2009, Sears allegedly became aware of "certain illegal wrongful practices by defendants."  Id. ¶ 32.  He notified his supervisor at HACM, Starla Warren ("Warren"), of "said illegal acts" and asked that they be corrected.  Id.  Warren maintained, however, that such "practices" were "in accord with all laws both state and federal."  Id.  Thereafter, Sears refused to engage in "illegal and wrongful bidding practices, violations of various and numerous federal laws, billing practices deception, coercive and deceptive practices involving tenants of HACM rental housing projects."  Id.

        On June 28, 2010, HACM "split away from the development side," resulting in a new non-profit corporation called the "Monterey Housing Authority Development Corporation" (i.e., HDC).  Aff. ¶ 18, Dkt. 1-1.  Six employees, including Sears, were transferred from HACM to HDC.  Id.  Warren then became President and Chief Executive Officer of HDC.  Id.  Sears' first day at HDC was on June 28, 2010.  Id.

---

[1] The affidavit appears to have been prepared in connection with Sears' appeal before the California Unemployment Insurance Appeals Board following the apparent denial of his claim for unemployment benefits.  The Court may properly consider the contents of that affidavit.  Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology, 228 F.3d 1043, 1049 (9th Cir. 2000) (when determining if the complaint states a claim for relief "we may consider facts contained in documents attached to the complaint").  However, the Court does not consider the new facts presented in Plaintiffs' responses to the pending motions to dismiss or the exhibits in support thereof.  See Schneider v. Calif. Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("'new' allegations contained in the [plaintiff]'s opposition …, however, are irrelevant for Rule 12(b)(6) purposes.").

Sears left for vacation on July 3, 2010.  Id.  Upon returning to work on July 19, 2010, "[Sears] was terminated without cause" by Warren.  Id. ¶ 19.  Sears protested his termination, and on August 4, 2010, met with Alan Styles, Chairman of the Board of Commissioners for HACM.  Id.[2]  The Board found Warren's termination of Sears to be "wrongful" and reinstated him to his prior position.  Id.  Sears returned to work on August 27, 2010, but, in contravention to the Board's instructions, was not returned to his role as a Senior Construction Manager.  Id.

On a date not specified by Sears, he received a letter stating that he was "not to act as a Senior Construction Manager and that [he] had been removed as a liaison with all projects or future projects."  Id.  The letter indicated that Paso Robles Development Corporation (whose relationship to Sears is not specified) "had formally requested [that Sears] be removed as a liaison and that Paso Robles issued a letter stating the same."  Id.  Sears asked for a copy of Paso Robles' letter but his request was rejected by Warren and CSI HR Group LLC ("CSI"), apparently an outside human resource consulting company hired by her.  Id.

On September 10, 2010, Sears met with Michael Alliman and Berta Torres of CSI, who informed Sears that sexual harassment allegations had been made against him.  Id. ¶ 21.  According to Sears, Warren had fabricated the sexual harassment allegations and presented them to CSI.  Id. ¶ 21.

On September 27, 2010, Plaintiff "stood up at a public meeting of the Board of Commissioners for [HACM] and presented evidence to them of violations of [various federal statutes"."  Aff. ¶ 24.  He also voiced similar complaints to the Monterey County Board of Supervisors, though it is not clear when that occurred.  Compl. ¶ 34.

On October 6, 2010, Warren "illegally" terminated Sears from HDC allegedly for being a "whistleblower."  Id. ¶ 22; Aff. ¶ 25.  In addition, Sears claims that only the HACM Board, not Warren, had the authority to terminate him.  Id.  Sears filed for unemployment

---

[2] Sears indicates that he was represented by attorney Trish Gaudoin in connection with his termination.  Id. ¶ 19.

benefits, which were challenged by Warren and apparently denied by the Employment

Development Department.  Id.  Sears appealed the decision to the California

Unemployment Insurance Appeals Board, though the outcome of such appeal is not stated.

Id. ¶ 4.

### B.  PROCEDURAL HISTORY

Acting pro se, Plaintiffs filed the instant action in this Court on April 19, 2011.  The

action was initially assigned to Magistrate Judge Howard Lloyd.  Plaintiffs filed a

declination to proceed before a magistrate judge, Dkt. 28, and the matter was reassigned to

Judge Jeremy Fogel, Dkt. 52.  The case was reassigned to the undersigned following Judge

Fogel's departure from the Northern District of California as an active judge.

The Complaint, which is far from being a model of clarity, alleges four causes of

action, styled as follows:  (1) Complaint to Recover Money; (2) Complaint for Negligence

Under Federal Law; (3) Co Party Complaint; and (4) Complaint for Intentional Negligence.

The gist of Plaintiffs' claims is that he was wrongfully terminated by HACM and/or HDC

for being a whistleblower after he complained to Warren, the Chief Executive Officer of

HACM and the Director of Development of HDC, inter alia, about illegal and deceptive

billing practices.

As Defendants, Plaintiffs have named twenty-five entities and individuals, as

follows:

1.    County of Monterey ("County") and County Board of Supervisors Fernando

Armenta, Louis R. Calgano, Simon Salinas, Jane Parker and David Potter;

2    HDC, HACM, HACM's former CEO and President James S. Nakashima, and

HACM's Board of Commissioners and the HDC's Board of Directors Elizabeth Williams,

Alan Styles, Thomas Espinoza, Kevin Healy, Josh Stewart, Andrew Jackson, and Merri

Bilek; and Starla Warren, President and CEO of HDC and Director of Development for

HACM;

3.    CSI, its President and CEO Michael Alliman, and CSI employee Berta

Torres;

4.      Grunksy, Ebey, Farrar & Howell PC ("Grunsky firm") and Thomas N. Griffin, an attorney with the Grunsky firm;

5.      Noland, Hamerly, Etiene & Hoss ("the Noland firm"), and Terrence R. O'Conner and Michael Masuda, attorneys with the Noland firm.

While the action was pending before Judge Fogel, various Defendants filed motions to dismiss, as follows:

- Defendants Elizabeth Williams, Alan Styles, Thomas Espinoza, Kevin Healy, Josh Stewart and Andrew Jackson's Motion to Dismiss, pursuant to Rule 12(b)(6), Dkt. 91;

- Defendants Thomas N. Griffin, the Law Firm of Grunksy, Ebey, Farrar & Howell P.C.'s Motion to Dismiss Complaint, Dkt. 56;

- Defendants CSI Human Resources Group LLC and Michael Alliman's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted, Dkt. 61;

- Defendants Noland Hamerly Etienne & Hoss, Michael Masuda and Terrence O'Connor (erroneously sued as "Terrence O'Conner")'s Motion to Dismiss, Dkt. 64; and

- Defendants County of Monterey, Fernando Amementa, Louis R. Calcagno, Simon Salinas, Jane Parker and Dave Potter Motion to Dismiss and for a More Definite Statement, Dkt. 53.

The remaining Defendants—HACM, HDC, James Nakashima, Kevin Healy, Merri Bilek, Starla Warren and Beca Torres—have not filed motions to dismiss or otherwise responded to the Complaint.

After the motions were filed and scheduled for hearing, Judge Fogel departed from this Court without ruling on any of the motions.  Moving Defendants have since renoticed their previously-filed motions on this Court's calendar.  The Court has reviewed the motions, which have been fully briefed, and finds them ripe for adjudication.

## II.    __LEGAL STANDARD__

Federal Rule of Civil Procedure 8 requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint may thus be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  In deciding a Rule 12(b)(6) motion, courts generally "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).  The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).

To survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The plaintiff must allege facts sufficient to "nudge his claims ... across the line from conceivable to plausible."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009) (quoting Twombly, 550 U.S. at 570). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  Stated another way, the allegations must "give the defendant fair notice of what the … claim is and the grounds upon which it rests."  Id.  In the event dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment.  See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

A pleading filed by a pro se plaintiff must be liberally construed.  Balistreri, 901 F.2d at 699.  Pro se status, however, does not excuse a litigant from complying with the requirement of alleging facts, not conclusions, in his or her pleadings.  See Brazil v. United States Dept. of Navy, 66 F.3d 193, 199 (9th Cir. 1995) ("Although a pro se litigant ... may be entitled to great leeway when the court construes his [or her] pleadings, those pleadings nonetheless

must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong.").

## III.   DISCUSSION

### A.   FIRST CAUSE OF ACTION

Plaintiffs' first claim for relief is styled as "Complaint to Recover Money," and is brought on behalf of Sears only.  Compl. ¶ 19.  The Complaint alleges that Sears was terminated by HACM and HDC on July 19, 2010, was reinstated by the HDC Board on August 27, 2010, but was "again terminated" by HDC Director Warren on October 6, 2010.  Id. ¶¶ 22-24.  Sears alleges that his termination was improper and that HACM and HDC owe him $80,804.29 under the terms of his employment contract.  Id. ¶¶ 26, 28.

Liberally construing the allegations of the Complaint, the Court finds that Sears is attempting to state a claim for breach of employment contract.[3]  To state such a claim, a plaintiff must allege facts establishing the existence of a contract, his performance or excuse for nonperformance, breach by the other party, and resulting damages.  See First Comm'l Mortgage Co. v. Reece, 89 Cal. App. 4th 731, 745 (2001).  "Under California law, 'only a signatory to a contract may be liable for any breach.'"  United Computer Sys., Inc. v. AT&T Corp. 298 F.3d 756, 761 (9th Cir. 2002) (quoting Clemens v. American Warranty Corp., 193 Cal. App. 3d 444, 452 (1987)).

Plaintiffs have failed to allege a plausible claim for breach of contract.  In particular, no facts are alleged regarding the terms of the alleged employment contract, the identity of the parties to said agreement or the particular provisions allegedly breached by Defendants.  If Sears' intention is to state a claim for breach of contract, he must allege such facts to support each element of his claim.  Iqbal, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  In addition, the only proper party-defendants to Plaintiff's first cause of action are his

---

[3] To the extent that Sears is making a whistleblower claim or claim for wrongful termination, said claims are analyzed below in the context of Plaintiffs' second cause of action which is discussed *infra*.

alleged employers, HACD and HDC.  Accordingly, the Court grants the Moving Defendants' motions to dismiss Plaintiffs' first cause of action.  Because this cause of action may be pursued only against Sears' alleged employers, HACD and HDC, granting leave to amend as to the Moving Defendants would be futile.  Therefore, this claim is dismissed without leave to amend as to the Moving Defendants.

### B.   SECOND CAUSE OF ACTION

#### 1.   Wrongful Termination/Retaliation

Plaintiffs' second claim, entitled "Complaint for Negligence Under [sic] federal law," alleges that Sears was demoted and ultimately terminated after complaining about "illegal" practices committed by his supervisor at HDC.  Compl. ¶¶ 32, 34.  Though presented as a claim for negligence, such claim, when liberally construed, is more appropriately characterized as a state law claim for wrongful termination in violation of public policy pursuant to Tameny v. Atlantic Richfield Co., 27 Cal.3d 167 (1980) and/or for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a).

In California, employment relationships are presumptively "at will," meaning that the relationship may be terminated by either party without cause.  Cal. Lab. Code § 2922; Stevenson v. Super. Ct., 16 Cal.4th 880, 887 (1997).  In Tameny, "the California Supreme Court carved out an exception to the at-will rule by recognizing a tort cause of action for wrongful terminations that violate public policy."  Freund v. Nycomed Amersham, 347 F.3d 752, 758 (9th Cir. 2003).  The elements of a claim for wrongful termination in violation of public policy are: (1) an employer-employee relationship; (2) an adverse employment action, (3) that the adverse employment action violated public policy, and (4) the adverse employment action caused the employee damages.  Haney v. Aramark Uniform Servs., Inc., 121 Cal. App. 4th 623, 641 (2004).  "[A] Tameny action for wrongful discharge can only be asserted against an employer.  An individual who is not an employer cannot commit the tort of wrongful discharge in violation of public policy; rather, he or she can only be the agent by which *an employer* commits that tort."  Miklosy v. Regents of Univ. of Cal., 44 Cal.4th 876, 900 (2008).

1    To state a claim for retaliation under Title VII, a plaintiff must establish that:
2 "(1) the employee engaged in a protected activity, (2) she suffered an adverse employment
3 action, and (3) there was a causal link between the protected activity and the adverse
4 employment decision."  Davis v. Team Elec. Co., 520 F.3d 1080, 1093-94 (9th Cir. 2008).
5 Only an employer may be liable under Title VII.  Miller v. Maxwell's Int'l, 991 F.2d 583,
6 587–88 (9th Cir. 1993).  Liability under Title VII "does not extend to individual agents of
7 the employer who committed the violations, even if that agent is a supervisory employee."
8 Pink v. Modoc Indian Health Proj., 157 F.3d 1185, 1189 (9th Cir. 1998).

9    In the instant case, only HACM and HCD are alleged to be Sears' former employers.
10 Compl. ¶ 21; Aff. ¶ 18.  As such, only those two Defendants, which have not filed motions
11 to dismiss, are proper parties to a claim for wrongful termination in violation of public
12 policy or for retaliation.  Therefore, the Court grants the Moving Defendants' motions to
13 dismiss Plaintiffs' second cause of action for wrongful termination in violation of public
14 policy and/or retaliation.  Because these claims may be pursued only against Sears' alleged
15 employers, HACD and HDC, granting leave to amend as to the Moving Defendants would
16 be futile.  Therefore, this claim is dismissed without leave to amend as to the Moving
17 Defendants.[4]

18               **2.        Statutes Cited in Second Cause of Action**

19    In Paragraph 33 of the Complaint, which is part of the second cause of action,
20 Plaintiffs string-cite a number of federal civil and criminal statutes with no supporting
21 factual allegations.  Though it is unclear from the pleadings whether Plaintiffs are
22 attempting to impose liability upon Defendants for violating some or all of the cited

23

24

25    [4] The Court's conclusion that the first and second causes of action may be brought
only against Sears' employer mandates the dismissal of these claims as to all Defendants
26 *other than* HACM and HDC.  See Silverton v. Dept. of Treasury, 644 F.2d 1341, 1345 (9th
Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to
27 defendants who have not moved to dismiss where such defendants are in a position similar
to that of moving defendants or where the claims against such defendants are integrally
28 related.").

statutes, Plaintiffs' opposition briefs suggest that they, in fact, are attempting to do so. Therefore, the Court addresses each of the cited statutes below.

### a)   *American Recovery and Reinvestment Act of 2009*

The American Recovery and Reinvestment Act of 1999 ("ARRA"), Pub. L. No. 111-5, 123 Stat. 115 (2009), popularly known as the Stimulus Act, was passed "as emergency legislation to rescue the American economy from the recent deep recession." Dorsey v. Jacobson Holman, PLLC, 707 F. Supp. 2d 21, 23 (D.D.C. 2010).  Section 1553(a) of the ARRA, prohibits non-federal employers who receive public funds from taking actions in "reprisal" for making disclosures protected by the Act.  These disclosures consist of:

> (1) gross mismanagement of an agency contract or grant relating to [ARRA] funds; (2) a gross waste of [ARRA] funds; (3) a substantial and specific danger to public health or safety related to the implementation or use of [ARRA] funds; (4) an abuse of authority related to the implementation or use of [ARRA] funds; or (5) a violation of law, rule, or regulation to an agency contract (including the competition for or negotiation of a contract) or grant, awarded and issued relating to [ARRA] funds.

Hosack v. Utopian Wireless Corp., No. DKC 11-0420, 2011 WL 1743297, at *6 (D. Md. May 6, 2011) (citing Pub. L. No. 111-5, § 1553(a)).  Stated another way, the alleged "whistleblowing" must pertain specifically to ARRA "stimulus" funds.  Id.

To the extent that Plaintiffs are attempting to state a claim under the ARRA, such efforts are misplaced.  First, by its express terms, § 1553(a) applies only to an "employer." Since none of the Moving Defendants was Sears' employer, Plaintiffs cannot sue any of them for violating the ARRA.  Second, § 1553 applies only to employers who are the recipients of "covered funds."  ARRA § 1553(a).  "Covered funds" means any contract, grant or other payment received by a non-federal employer provided that "at least some of the funds are appropriated or otherwise made available by this Act."  Id. § 1553(g)(2). None of the Moving Defendants are alleged to have received covered funds under the ARRA.  Finally, Plaintiffs have failed to allege facts demonstrating that they exhausted their administrative remedies, which is a prerequisite to pursuing an ARRA claim in federal

court.  ARRA § 1553(c)(3).  Specifically, Plaintiffs have not alleged that they filed a complaint with the Inspector General prior to filing this lawsuit or that the Inspector General issued a written determination regarding his claim within 180 days.  Id. § 1553(b), (c).  Therefore, Plaintiffs' claim under the ARRA is dismissed with prejudice as to the Moving Defendants.

### b)      Title VII of the Civil Rights Act of 1964

Title VII of the Civil Rights Act of 1964 ("Title VII") forbids employment discrimination based on "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  Title VII's anti-retaliation provision makes it unlawful for an employer to retaliate against an employee because "he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title."  42 U.S.C. § 2000e-3(a).  However, because none of the Moving Defendants was Sears' employer, they cannot be liable for discrimination or retaliation under Title VII.   See, e.g., Miller v Maxwell's Int'l Inc., 991 F.2d 583, 587 (9th Cir. 1993) ("The statutory scheme itself indicates that Congress did not intend to impose individual liability on employees.  Title VII limits liability to employers …..").  Therefore, Plaintiffs' claim under Title VII's anti-retaliation provision is dismissed with prejudice as to the Moving Defendants.

### c)      Age Discrimination in Employment Act

The Age Discrimination in Employment Act ("ADEA") prohibits discrimination in employment on the basis of the employee's age, and like Title VII, the ADEA contains an anti-retaliation provision.  29 U.S.C. § 623(d).  Similarly, the only proper defendant in an ADEA claim is the plaintiff's employer.  See Miller, 991 F.2d at 587 ("The liability schemes under Title VII and the ADEA are essentially the same in aspects relevant to this issue; they both limit civil liability to the employer.").  Thus, for the same reason stated above, Plaintiffs' claim under the ADEA's anti-retaliation provision is dismissed with prejudice as to the Moving Defendants.

### d)      False Claims Act

The False Claims Act ("FCA") contains a "whistleblower" provision that prohibits terminating an employee in retaliation for engaging in conduct protected by the FCA. 31 U.S.C. § 3730(h)(1).  The only proper party-defendant in a retaliation claim under the FCA is the plaintiff's employer.  See United States ex rel. Parato v. Unadilla Health Care Ctr., Inc., 787 F. Supp. 2d 1329, 1341 (M.D. Ga. 2011) (ruling that only the plaintiff's employer, not individual employees, could be held liable in a FCA retaliation claim); c.f. Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1103 (9th Cir. 2008) (noting that to state a FCA retaliation claim the plaintiff must show, inter alia, "that *the employer* knew the plaintiff engaged in protected activity" and "that *the employer* discriminated against the plaintiff because he or she engaged in protected activity.") (emphasis added).  Since Moving Defendants were not Sears' employer, Plaintiffs' FCA retaliation claim is dismissed with prejudice as to these Defendants.

### e)      *Sarbanes-Oxley Act*

"SOX's [i.e., Sarbanes-Oxley Act] whistleblower provision, 18 U.S.C. § 1514A, protects *employees of publicly-traded companies* from discrimination in the terms and conditions of their employment when they take certain actions to report conduct that they reasonably believe constitutes certain types of fraud or securities violations."  Tides v. The Boeing Co., 644 F.3d 809, 813 (9th Cir. 2011) (emphasis added).  Plaintiffs cannot state a claim based on SOX's whistleblower provision because neither is an employee of any of the Moving Defendants.  To the contrary, the pleadings expressly allege that Sears was employed by HACM and HDC, neither of which is alleged to be a publicly-traded company.[5]  Compl. ¶ 5(g), (p).  Given these allegations, Plaintiffs cannot amend their Complaint in a contradictory manner to allege that HACM or HDC are publicly-traded entities.  See Reddy v. Litton Inds., Inc., 912 F.2d 291, 296-97 (9th Cir.1990) ("Although leave to amend should be liberally granted, the amended complaint may only allege 'other

---

[5] The Complaint alleges that HACM is a public agency which provides affordable housing and associated services in Monterey County.  Compl. ¶ 5(g).  HDC is alleged to be "subdivision" of HACM and is organized as a non-profit entity under § 501(c)(3) of the Internal Revenue Code.  Id. ¶ 5(p).

facts consistent with the challenged pleading.'") (quoting Schreiber Dist. Co. v. Serv-Well Furniture Co., Inc., 805 F.2d 1393, 1401 (9th Cir. 1986)).  Accordingly, this claim is dismissed without leave to amend as to all Defendants.

### f)    42 U.S.C. § 1983

Title 42 of the United States Code, section 1983, allows individuals to sue government officials who violate their civil rights while acting "under color of any statute, ordinance, regulation, custom, or usage, of any State."  42 U.S.C. § 1983.  To maintain a claim pursuant to § 1983, a plaintiff must establish:  (1) the deprivation of any rights, privileges or immunities secured by the Constitution or federal law, (2) by a person acting under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir. 2009).

"[A] municipality may be held liable under § 1983 only for constitutional violations occurring pursuant to an official government policy or custom."  Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006).  In contrast, to establish individual liability under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 129 S.Ct. at 1948.  "Liability under section 1983 arises only upon a showing of personal participation by the defendant."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."  Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

The "under color of state law" requirement is an essential element of a § 1983 case, and it is the plaintiff's burden to establish that this element exists.  See Lee v. Katz, 276 F.3d 550, 553-54 (9th Cir. 2002).  Here, Plaintiffs fails to meet this burden, as no facts are alleged in the Complaint to establish that any of the Moving Defendants were acting under color of state law with respect to any of the incidents that form the basis of this action—or that they were even involved in the termination of Sears.  To the contrary, the Complaint expressly alleges that HDC, a 501(c)(3) non-profit entity acting through Warren, fired Sears.  Compl. ¶¶ 5(p), 24.  Private parties, including attorneys and directors of non-profit

organizations, are not acting under color of state law.  See Price v. Hawaii, 939 F.2d 702, 707-08 (9th Cir. 1991).

In their opposition to the County Defendants' motion to dismiss, Plaintiffs seem to suggest that the County was somehow complicit in his termination through its alleged relationship with HACM and HCD.  See Pls.' Opp'n to County Defs. Mot. to Dismiss at 14, Dkt. 136.  The County cannot be held liable under § 1983 absent allegations that it acted pursuant to a policy, custom or practice, which is not alleged.  Moreover, although the HACM was created under the auspices of California Health and Safety Code § 34240, it is not the agent of and remains separate from the County.  See Housing Authority of City of Los Angeles v. City of Los Angeles, 38 Cal.2d 853, 961-62 (1952).  As for the HCD, its purported nexus with the County Defendants is even more attenuated given Plaintiffs' allegations that HCD is a non-profit entity and a "subdivision" of HACM.  Compl. ¶ 5(p).  In any event, Plaintiffs' allegations regarding the role of the Moving Defendants in the alleged civil rights violations are too conclusory to state a claim.

In sum, the Court dismisses Plaintiffs' claim under 42 U.S.C. § 1983 as to the Moving Defendants.  Because it is possible that Plaintiffs may be able to cure the foregoing deficiencies, said dismissal is with leave to amend.

### g)    42 U.S.C. §§ 1985 and 1986

To state a claim under 42 U.S.C. § 1985 for a conspiracy to violate civil rights, a plaintiff must plead four elements:  "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).  The second element requires the plaintiff to identify a legally protected right and demonstrate "a deprivation of that right motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'"  Id. (quoting in part Griffith v. Breckenridge, 403 U.S. 88, 102

(1971)).  Under 42 U.S.C. § 1986, a person may be liable if he or she knows of a conspiracy to violate civil rights and has the power to prevent the violation, but refuses or neglects to do so.  See Delta Sav. Bank v. United States, 265 F.3d 1017, 1024 (9th Cir. 2001).

Plaintiffs' claim under § 1985 is subject to dismissal based on their failure to sufficiently allege a § 1983 claim.  See Thornton v. City of St. Helens, 425 F.3d 1158, 1168 (9th Cir. 2005) ("The absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations.") (internal quotation marks omitted).  Likewise, a § 1986 claim cannot stand absent a viable § 1985 claim.  Trerice v. Pedersen, 769 F.2d 1398, 1403 (9th Cir.1985) ("This Circuit has recently adopted the broadly accepted principle that a cause of action is not provided under 42 U.S.C. § 1986 absent a valid claim for relief under section 1985.").

In addition, Plaintiffs' vague and conclusory allegations of a conspiracy are insufficient to state a claim for conspiracy under § 1985.  See Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir.1989) (failure to show a meeting of the minds and the deprivation of rights was fatal to civil rights conspiracy claim); Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir.1980) ("Vague and conclusory allegations of official participation in civil rights violations," without more, insufficient to sustain a claim).  For these reasons, the Court dismisses Plaintiffs' claims under 42 U.S.C. §§ 1985 and 1986 as to the Moving Defendants, with leave to amend.

### h)    Criminal Statutes

Plaintiffs allege that Defendants violated the following federal criminal statutes: 18 U.S.C. § 241 (conspiracy against rights); id. § 242 (deprivation of rights under color of law); id. § 245(b) (interference with federally-protected rights); id. § 1512 (witness tampering); id. § 1515 (defining terms for 18 U.S.C. § 1512).  These statutes are federal criminal statutes that do not provide for a private civil right of action.  Aldabe, 616 F.2d at 1092 (affirming dismissal of claims brought under criminal provisions that "provide[d] no

basis for civil remedy").  Therefore, the Court dismisses said claims with prejudice as to all Defendants.

### C.   THIRD CAUSE OF ACTION

#### 1.   Harm Resulting from Sears' Termination

Plaintiffs' third cause of action for "Co Party Complaint" appears, at least facially, to be an attempt to state a claim on behalf of Stealy-Sears for emotional distress or loss of consortium.  According to the pleadings, Stealey-Sears was "intimately involved ... and affected by all matters related to this civil action" due to the "personal attack" on her husband.  Compl. ¶ 38.  She alleges that "her private emails have been raided by defendants," and that Defendants caused her "private business to be opened up to public meeting."  Id. ¶¶ 39, 40. She further alleges that Defendants "should have known that spousal protections in any employment situation are set out and protected by law.  Id. ¶ 39.  She also alleges that Defendants' conduct has caused her "former business associates to shun" her.  Id. ¶ 41.

To the extent that Sealy-Sears is seeking recovery for harm resulting from the termination of her husband, such a claim fails as a matter of law.  Sealy-Sears must establish, as a threshold matter, that Defendants owed her a duty of care.  See Mega Life and Health Ins. Co. v. Superior Court, 172 Cal. App. 4th 1522, 1533 (2009).  The mere fact that Sealy-Sears' spouse was terminated does not establish such a duty.  See id.  It is for that reason that courts have generally held that an individual cannot sue based on termination of his or her spouse.  See Anderson v. Northrop Corp., 203 Cal. App. 3d 772, 777-780 (1988) (holding that employer owed no duty to spouse arising from termination of her husband's employment); see also Holt v. JTM Indus., Inc., 89 F.3d 1224, 1227 (5th Cir. 1996) (holding that spouse who had not participated in protected conduct "does not have automatic standing to sue for retaliation ... simply because his spouse has engaged in protected activity"); but see Rubin v. Kirkland Chrysler-Jeep, Inc., No. No. C05-0052C, 2006 WL 1009338, at *8 (W.D. Wash. Apr. 13, 2006) (noting that the Ninth Circuit has not addressed whether a spouse has standing to assert a Title VII retaliation claim based on her

spouses protected conduct).[6]  Therefore, the third cause of action, insofar as it is based on Sears' termination, is dismissed without leave to amend.

### 2.    Invasion of Privacy

The above notwithstanding, the Court notes that Sealy-Sears also alleges that unspecified Defendants "raided" her "private email" and exposed her "private business" to the public.  Compl. ¶¶ 39-40.  Though not entirely clear, she may be attempting to state an invasion of privacy claim based on the public disclosure of private facts.  See Motschenbacher v. R.J. Reynolds Tobacco Co., 498 F.2d 821, 824 (9th Cir. 1974) (describing privacy torts).  "The elements of a common law action for invasion of privacy are (1) a public disclosure (2) of private facts (3) which would be offensive and objectionable to a person of ordinary sensibilities."  Wasson v. Sonoma Cnty. Jr. College Dist., 4 F. Supp. 2d 893, 908 (N.D. Cal. 1997) (citing Forsher v. Bugliosi, 26 Cal.3d 792, 808-09 (1980)).

The Complaint, as pled, is insufficient to state a claim for invasion of privacy based on the public disclosure of private facts.  First, Sealy-Sears fails to allege facts demonstrating that there was a public disclosure.  Though the Complaint makes reference to a "public meeting," no facts are alleged concerning where and when this meeting occurred, who was present or what facts were disclosed.  Second, Sealy-Sears offers no facts showing that *private* facts were disclosed to the public.  Rather, she alleges only that her "private emails" were "raided" by Defendants.  Compl. ¶ 39.  To place Defendants on "fair notice" of the claim alleged against them, Sealy-Sears must allege facts regarding when and how each of the twenty-five Defendants was involved in "raiding" her emails, and what *private facts* were obtained and publicly-disclosed.  Finally, Sealy-Sears has alleged no facts demonstrating that "the matter made public" was "one which would be

---

[6] As noted, the only proper defendant in a Title VII claim is the plaintiff's employer. Thus, even if Sealy-Sears had standing to sue as a spouse, the Moving Defendants would not be proper defendants.

The apparent split in authority does not affect the Moving Defendants, since they are not, in any event, alleged to be Sears' employer.

offensive and objectionable to a reasonable person of ordinary sensibilities." Forsher, 26 Cal.3d at 809 (internal brackets omitted). Sealy-Sears' putative claim for invasion of privacy is therefore dismissed with leave to amend. Should Plaintiffs elect to amend the Complaint and include a claim for invasion of privacy, they must allege *facts* sufficient to rectify these numerous deficiencies.[7]

### 3. Computer Fraud and Abuse Act

Plaintiffs' allegations that Defendants "raided" Sealy-Sears' private email account also may be liberally construed as an attempt to state a claim under the federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, which proscribes the intentional access of a computer without authorization or exceeding authorized access. The CFAA includes a civil remedy provision for violations of 18 U.S.C. § 1030(a)(2). See 18 U.S.C. § 1030(g). To plead a violation of § 1030(a)(2), a plaintiff must allege facts showing that the defendant:

> (1) intentionally accessed a computer, (2) without authorization or exceeding authorized access, and that he (3) thereby obtained information (4) from any protected computer (if the conduct involved an interstate or foreign communication), and that (5) there was loss to one or more persons during any one-year period aggregating at least $5,000 in value.

LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1132 (9th Cir. 2009). "Loss" is defined by the statute as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or

---

[7] The Court notes that Plaintiffs' supplemental state law tort claims are not cognizable against the County of Monterey and the individual supervisors unless Plaintiffs first timely filed a tort claim under the California Tort Claims Act ("CTCA"). See Cal. Gov. Code § 950.2; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir.1988) (affirming dismissal of supplemental state law claims against public employee where plaintiff failed to allege compliance with the CTCA). Thus, if Plaintiffs seek to allege a state law tort claim, including a claim for invasion of privacy, against the County of Monterey and its supervisors, they must allege facts demonstrating their compliance with the CTCA.

other consequential damages incurred because of interruption of service." 18 U.S.C.
§ 1030(e)(1).

In the instant case, Sealy-Sears offers only the conclusory allegation that unspecified
Defendants "raided" her private emails.  Compl. ¶ 39.  If her intention is to state a claim
under the CFAA, she must allege *facts*—not mere conclusions—with respect to *each* of the
aforementioned elements.  Accordingly, Sealy-Sears' putative claim for violation of the
CFAA is dismissed with leave to amend.

### 4.    Stored Communications Act

Finally, the allegations contained in the third cause of action may be liberally
construed as an attempt to state a claim under the Stored Communications Act, 18 U.S.C.
§§ 2701, et seq.  The Stored Communications Act, which is set forth as Title II of the
Electronic Communications Privacy Act, prohibits a party from "intentionally [accessing]
without authorization a facility through which an electronic communication service is
provided" or "intentionally exceeds an authorization to access that facility[.]"  18 U.S.C.
§ 2701(a).

The elements of claim under Stored Communications Act for unauthorized access of
an e-mail account are:  (1) defendant intentionally accessed a facility through which an
electronic communications service is provided; (2) such access was not authorized or
intentionally exceeded any authorization by the person or entity providing the electronic
communications service, the user of that service with respect to a communication of or
intended for that user, or a federal statute; (3) defendant thereby obtained, altered, or
prevented authorized access to an electronic communication while it was in electronic
storage in such system; and (4) the defendant's unauthorized access or access in excess of
authorization caused actual harm to the plaintiff.   Cornerstone Consultants, Inc. v. Prod.
Input Solutions, L.L.C., 789 F. Supp. 2d 1029, 1047 (N.D. Iowa 2011).  Here, Sealy-Sears
has made no factual showing as to any of these elements.  Thus, to the extent that she is
attempting to pursue a claim under the Stored Communications Act, said claim is dismissed
with leave to amend.

### D.    FOURTH CAUSE OF ACTION

Plaintiffs' fourth and final claim is the oxymoronically captioned claim for "intentional negligence" and is brought by Sears only.  Sears alleges that beginning in 2010 Defendants "decided to cooperate to cover up wrong doing within Monterey County California Governmental Agencies."  Compl. ¶ 43.  Plaintiffs allege they have spent "hundreds of hours investigating" Defendants and passed the results of their investigation to federal investigators, and therefore, they "deserve compensation."  Id. ¶ 44.  Liberally construed, this claim appears to be an attempt to state a claim under the FCA, 31 U.S.C. § 3730(h), the federal whistleblower statute.

Under the FCA, a private individual is empowered to bring a qui tam action on behalf of the federal government against any individual or company who has knowingly presented a false or fraudulent claim to the United States government.  See United States ex rel. Anderson v. N. Telecom, 52 F.3d 810, 812-13 (9th Cir. 1995).  "The essential elements of an FCA claim are (1) a false statement or fraudulent course of conduct, (2) made with requisite scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due."  United States v. Corinthian Colleges, 655 F.3d 984, 992 (9th Cir. 2011).  If the plaintiff is successful, the judgment is shared with the government.  31 U.S.C. § 3730(d).  The purpose of the qui tam provisions of the FCA is to encourage private individuals who are aware of fraud being perpetrated against the government to disclose that information.  United States ex rel. Hopper v. Anton, 91 F.3d 1261, 1265-66 (9th Cir. 1996).

As a general rule, pro se litigants cannot represent anyone but themselves.  Johns v. County of San Diego, 114 F.3d 874, 876 (9th Cir. 1997).  Because a qui tam plaintiff is deemed to bring the action on behalf of the federal government, a pro se plaintiff cannot maintain such an action.  See Stoner v. Santa Clara County Office of Educ., 502 F.3d 1116, 1126-27 (9th Cir. 2007) ( "Because qui tam relators are not prosecuting only their 'own case' but also representing the United States and binding it to any adverse judgment the relators may obtain, we cannot interpret [28 U.S.C.] § 1654 as authorizing qui tam relators

to proceed pro se in FCA actions.").  As a result, Plaintiffs may pursue a qui tam action

under the FCA only through counsel.  Id.

Even if Plaintiffs were represented by counsel, their Complaint fails to allege facts

sufficient to state a claim under the FCA.  Though Plaintiffs vaguely allege that Defendants

"cooperated" in covering up alleged wrongdoing, Comp. ¶ 43, they do not allege that any

Defendant "made a demand for payment, fraudulently used a receipt, participated in an

unauthorized purchase of government property, or used a false record or statement," see

Cafasso v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1056 (9th Cir. 2011).  In the absence of

any factual allegations that any Defendant submitted a false claim, Plaintiffs' putative FCA

claim must fail.  See United States ex rel. Aflatooni v. Kitsap Physicians Serv., 314 F.3d

995, 997 (9th Cir. 2002) ("It seems to be a fairly obvious notion that a False Claims Act

suit ought to require a false claim.").  Accordingly, the Court grants Moving Defendants'

motions to dismiss Plaintiffs' fourth cause of action ostensibly under the FCA.  Said claim

is dismissed with leave to amend only to the extent that Plaintiffs are able to retain a

licensed attorney who can correct the deficiencies discussed above.

### E.    LEAVE TO AMEND

"Dismissal of a pro se complaint without leave to amend is proper only if it is

absolutely clear that the deficiencies of the complaint could not be cured by amendment."

Weilburg v. Shapiro, 488 F.3d 1202, 1205 (9th Cir. 2007).  Setting aside the conclusory,

yet pervasive, hyperbole alleged in the Complaint, Plaintiffs' action, at its core, is one for

wrongful termination.[8]  At the same time, it remains possible that Plaintiffs will be able to

cure the deficiencies of their Complaint by amending the pleadings.  Therefore, the Court

will permit Plaintiffs partial leave to amend only with respect to their claims under the

FCA, 42 U.S.C. §§ 1983, 1985 and 1986 and their third cause of action.  All other claims

against the Moving Defendants are dismissed with prejudice.

---

[8] Though Plaintiffs seem to dispute this, they offer no *facts* to support their
allegations of a vast conspiracy to terminate and retaliate against Sears.

1    Plaintiffs should be aware that if they elect to file an amended complaint, they must

2    have a good faith basis, both in law and fact, to amend their claims and to invoke the

3    jurisdiction of this Court.  This is a requirement under Rule 11 of the Federal Rules of Civil

4    Procedure.  If Plaintiffs violate Rule 11, i.e., by making allegations without a good faith

5    basis for doing so, they may be subject to sanctions—*including monetary sanctions*.  <u>See</u>

6    <u>Warren v. Guelker</u>, 29 F.3d 1386, 1388 (9th Cir. 1994) (noting that Rule 11 applies to pro

7    se litigants).  Under the plain language of Rule 11, when one party seeks sanctions against

8    another, the Court must first determine whether any provision of Rule 11(b) has been

9    violated.  <u>Id.</u> at 1389.  If the Court determines that Rule 11(b) has been violated, the Court

10   "may impose an appropriate sanction on any attorney, law firm, or party that violated the

11   rule or is responsible for the violation."  Fed. R. Civ. P. 11(c)(1).  "If warranted, the court

12   may award to the prevailing party the reasonable expenses, including attorney's fees,

13   incurred for the motion."  <u>Id.</u> 11(c)(2).

14   Finally, Plaintiffs are advised an amended complaint supersedes the original

15   complaint and the original complaint is thereafter treated as nonexistent.  <u>Armstrong v.</u>

16   <u>Davis</u>, 275 F.3d 849, 878 n.40 (9th Cir. 2001), <u>abrogated on other grounds by</u> <u>Johnson v.</u>

17   <u>California</u>, 543 U.S. 499 (2005).  The amended complaint must therefore be complete in

18   itself without reference to the prior or superceded pleading, as "[a]ll causes of action

19   alleged in an original complaint which are not alleged in an amended complaint are

20   waived."  <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted).

21       **F.    SUFFICIENCY OF SERVICE AS TO CSI AND MICHAEL ALLIMAN**

22   Defendants CSI and Michael Alliman ("Alliman") request that, in the event

23   Plaintiffs' claims are not dismissed with prejudice, the Court dismiss the action or quash

24   service of process, pursuant to Federal Rule of Civil Procedure 12(b)(5).  These Defendants

25   contend that they were improperly served by certified mail in violation of Federal Rule of

26   Civil Procedure 4.  As set forth below, the Court agrees.

27

28

### 1.    Legal Standard

Federal courts cannot exercise personal jurisdiction over a defendant without proper service of process.  Omni Capital Int'l, Ltd. v. Wolff & Co., 484 U.S. 97, 104 (1987); see also SEC v. Ross, 504 F.3d 1130, 1138 (9th Cir. 2007) ("Service of process is the means by which a court asserts its jurisdiction over the person.").  To determine whether service of process is proper, courts look to the requirements of Rule 4.  Once service of process has been challenged by the defendant, plaintiff bears the burden of proving valid service in accordance with Rule 4.  See Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004).  Ordinarily, where the court finds that the method of service of process was not proper, the remedy is to quash service and require plaintiff to effect proper service.  Stevens v. Security Pacific Nat'l Bank, 538 F.2d 1387, 1389 (9th Cir. 1976).

### 2.    Service on Michael Alliman

Under the Federal Rules of Civil Procedure, an individual may be served by "[1] delivering a copy of the summons and of the complaint to the individual personally; [2] leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or [3] delivering a copy of each to an agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(e)(2).  Alternatively, service may be accomplished by "following state law for serving a summons in an action."  Id. 4(e)(1).  In California, service of process on an individual inside the state may be accomplished through (1) personal delivery of the summons and complaint on the defendant or an authorized agent, Cal. Code Civ. Proc. § 415.10; (2) substitute service upon another person at the defendant's residence or place of business, id. § 415.20; (3) mail service coupled with an acknowledgment of receipt, id. § 415.30; or (4) by publication, id. § 415.50.  See Schwarzer, et al., Fed. Civ. Proc. Before Trial, § 5.168 at 5-39 (TRG 2010).

Plaintiffs did not comply with the California rules for service on individuals, nor did they comply with the federal rules by serving Defendant Alliman.  According to Plaintiffs' affidavit of service, they simply sent the summons and complaint to Alliman by certified

mail.  CSI Mot. Ex. B, Dkt. 61.  "Although California law does permit service of a summons by mail, such service is valid only if a signed acknowledgment is returned and other requirements are complied with[.]"  Barlow v. Ground, 39 F.3d 231, 234 (9th Cir. 1994).  Service by certified mail is insufficient where, as here, there is no executed acknowledgement of receipt in accordance with California Code of Civil Procedure § 415.30.  Id. (citing Tandy Corp. v. Superior Court, 117 Cal. App. 3d 911, 913 (1981)).  Thus, service on Alliman was ineffective.

### 3.    Service on CSI

Rule 4(h) provides for two methods of service on domestic corporations, partnerships or associations.   First, these types of entities may be served is "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(h)(1)(B).  Second, a plaintiff may serve process, in accordance with Rule 4(e)(1), by following the law of the state where the district court is located or of the state where service is effected.  Id. 4(h)(1)(A).

The record shows that Plaintiffs attempted to serve CSI by sending the summons and complaint to its agent for service of process, Jerry Chyol, by certified mail.  CSI Mot. Ex. A.  Service by certified mail does not satisfy Rule 4(h)(1)(B), which requires personal service.  In re TFT-LCD (Flat Panel) Antitrust Litig., Nos. M 07-1827 SI, C 09-1115 SI, 2009 WL 4874872, at *1 (N.D. Cal. Oct. 6, 2009).  Nor have Plaintiffs demonstrated that they have complied with California's service rules, which allows for service of summons by mail, but only if a copy of the summons and complaint are accompanied by two copies of the notice and acknowledgment of receipt of summons.  See Cal. Civ. Proc. Code § 415.30.  In failing to do so, Plaintiffs have failed to carry their burden of establishing that CSI was properly served.  See Brockmeyer, 383 F.3d at 801.  Thus, the Court finds that service on CSI was ineffective as well.

**4.      Disposition**

Plaintiffs have failed to demonstrate that Defendants CSI or Alliman were served in accordance with Rule 4.  Accordingly, service of process is quashed as to these Defendants. Should Plaintiffs decide to amend their Complaint, Plaintiffs are granted leave to properly serve their amended complaint on Defendants CSI and Alliman within thirty (30) days of the date of the filing of said pleading.

**IV.      <u>CONCLUSION</u>**

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1.      Moving Defendants' motions to dismiss are GRANTED.

2.      Plaintiffs shall have thirty (30) days from the date this Order is filed to file a First Amended Complaint, consistent with the Court's rulings as set forth above.  *Plaintiffs are warned that any additional factual allegations set forth in their amended complaint must be made in good faith and consistent with Rule 11.*  Plaintiffs are granted leave to amend their claim under the FCA *only* if they are represented by a licensed attorney. Plaintiffs are not granted leave to include new claims in their amended complaint.  Should Plaintiffs decide to amend their Complaint, Plaintiffs are granted leave to properly serve their amended complaint on Defendants CSI and Alliman within thirty (30) days of the date of the filing of said pleading.

4.      The motion hearing and Case Management Conference scheduled for February 7, 2012 are VACATED.  The parties shall appear for a **telephonic** Case Management Conference on **<u>April 25, 2012 at 3:30 p.m.</u>**  Prior to the date scheduled for the conference, the parties shall meet and confer and prepare a joint Case Management Conference Statement which complies with the Standing Order for All Judges of the Northern District of California and the Standing Orders of this Court.  Plaintiffs shall assume responsibility for filing the joint statement no less than seven (7) days prior to the conference date.  Plaintiffs are to set up the conference call with all the parties on the line

and call chambers at (510) 637-3559.  NO PARTY SHALL CONTACT CHAMBERS

DIRECTLY WITHOUT PRIOR AUTHORIZATION OF THE COURT.

        4.       This Order terminates Docket Nos. 53, 56, 61, 64 and 91.

        IT IS SO ORDERED.

Dated: February 3, 2012

                                      _____
                                        SAUNDRA BROWN ARMSTRONG
                                        United States District Judge

1    UNITED STATES DISTRICT COURT
     FOR THE
2    NORTHERN DISTRICT OF CALIFORNIA

3
     SEARS ET AL et al,
4
                    Plaintiff,
5
          v.
6
     COUNTY OF MONTEREY ET AL et al,
7
                    Defendant.
8    _____/

9
                                              Case Number: CV11-01876 SBA
10
                                              **CERTIFICATE OF SERVICE**
11

12   I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
     Court, Northern District of California.
13
     That on February 3, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said
14   copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing
     said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle
15   located in the Clerk's office.

16
     Brenda L Stealey-Sears
17   1160 Trivoli Way
     Salinas,  CA 93905
18

19   Thomas M Sears
     1160 Trivoli Way
20   Salinas,  CA 93905

21
     Dated: February 3, 2012
22                                            Richard W. Wieking, Clerk

23                                            By: LISA R CLARK, Deputy Clerk

24

25

26

27

28