1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                             NORTHERN DISTRICT OF CALIFORNIA

10                                     SAN JOSE DIVISION

11   THOMAS M. SEARS,                          )   Case No.: 11-CV-1876-LHK
                                               )
12           Plaintiff,                        )
                                               )
13       v.                                    )   ORDER GRANTING DEFENDANT'S
                                               )   MOTION FOR SUMMARY
14   HOUSING AUTHORITY OF THE COUNTY           )   JUDGMENT, DENYING PLAINTIFF'S
     OF MONTEREY, et al.,                      )   MOTION FOR LEAVE TO FILE
15                                             )   FOURTH AMENDED COMPLAINT
             Defendants.                       )
16                                             )
     _____ )

17

18         Plaintiff Thomas Sears ("Sears") brings this action against his former employer, Monterey

19   County Housing Authority Development Corporation ("HDC") for wrongful termination in

20   violation of public policy, violation of Cal. Labor Code § 1102.5, and retaliation in violation of the

21   False Claims Act ("FCA"), 31 U.S.C. § 3730(h)(1). Before the Court are Defendant HDC's Motion

22   for Summary Judgment, *see* ECF No. 250, and Plaintiff Sears' Motion for Leave to File a Fourth

23   Amended Complaint, *see* ECF No. 264. Both motions are fully briefed. Pursuant to Civil Local

24   Rule 7-1(b), the Court finds these matters appropriate for resolution without oral argument and

25   hereby VACATES the hearings on these Motions set for April 10, 2014, at 1:30 p.m. The Court,

26   having considered the record in this case, applicable law, and parties' briefs, GRANTS HDC's

27   Motion for Summary Judgment and DENIES Sears' Motion for Leave to File a Fourth Amended

28   Complaint for the reasons stated below.

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

I.      **BACKGROUND**

     A.      **Factual Background**

In October 2006, the Housing Authority of the County of Monterey ("HACM") hired Sears as a Senior Construction Manager and Deputy Director of Development for HDC, a nonprofit that had not yet launched. *See* ECF No. 268 ("Sears Opp. Decl.") ¶ 5. In or around June 2010, Sears officially transferred to HDC, as the entity became independent of HACM. ECF No. 253 ("Warren Decl.") ¶ 6. Starla Warren, who recruited Sears at HACM, was Sears' supervisor at HDC. Sears Opp. Decl. ¶¶ 4-5.

In early 2009, while he was still at HACM, Sears "began noticing and speaking out against practices which [he] felt were unlawful and in violation of state and federal regulations." *Id.* ¶ 9. These alleged violations included: (1) bid-fixing in violation of HUD federal procurement regulations, in connection to three different HDC development projects; (2) falsifying estimates on applications for federal HUD funding; (3) creating fraudulent documents on applications for state funding; (4) violations of the Fair Housing Act; and (5) commingling of funds. *Id.* ¶¶ 27-56. Sears contends that he reported the aforementioned legal violations to Warren. *Id.*

Sears asserts that his relationship with Warren began to change as a result of his vocal complaints. *Id.* ¶ 11. Sears felt that Warren wanted him out of HDC, and that because she was newly empowered with the authority to fire him after HDC's split from HACM, Warren engaged in a deliberate campaign to "paper" Sears by giving Sears several reprimands and warnings, and placing Sears on administrative leave. *Id.* ¶ 22.

The first of these reprimands took place in July 2010, shortly after HDC became an independent entity from HACM. *Id.* ¶ 13. Sears then complained to John Curro ("Curro"), a construction manager consultant, and Warren, about what Sears perceived to be bid-fixing in connection to two development projects. *Id.* ¶¶ 12, 14. Sears went on a two-week vacation, and upon his return, received a letter from Warren stating that Sears would be terminated within five working days. *Id.* ¶ 15. Sears was placed on administrative leave from July 19, 2010 to August 27, 2010, with a "Preliminary Notice of Proposed Termination Action." *Id.*

**United States District Court**
For the Northern District of California

1    Sears argues that the preliminary termination notice was retaliation for his vocal complaints

2    of bid-fixing. Opp. at 10. HDC's notice, however, detailed four reasons for HDC's preliminary

3    decision to terminate Sears: (1) Sears prepared tax credit applications that were unreadable and had

4    to be re-done by other HDC employees; (2) Sears improperly stored documents on an external hard

5    drive; (3) Sears failed to develop a budget for permit fees in a timely fashion and did not obtain the

6    necessary signatures for the permits' submission, jeopardizing the application; and (4) Sears

7    mismanaged architectural contracts, which caused a time crunch in the application process and

8    required two contracts to be re-written and re-executed. Warren Decl. ¶ 7. Sears filed a timely

9    appeal, and while the hearing officer found deficiencies in Sears' performance, the officer

10   concluded that Sears' conduct did not merit termination. *Id.* ¶ 8; Sears Opp. Decl. ¶ 16.

11   Importantly, the second basis regarding storage of information on an external hard drive echoed

12   Warren's previous warnings to Sears. In March 2010, Warren reprimanded Sears for not placing

13   files on the shared drive. Warren Decl. Ex. E. At that time, Warren and Sears had discussed that

14   Sears' external hard drive would be used for drawings and photos only. *Id.*; Sears Opp. Decl. Ex. F,

15   at 2.

16          While Sears was on administrative leave, HDC employees had to access Sears' HDC

17   computer to find HDC documents. Warren Decl. ¶ 11. HDC employees discovered voluminous

18   amounts of non-HDC-related business documents. *Id.* Specifically, the employees discovered

19   business documents related to EnTech, Inc., a corporation of which Sears and his wife, were

20   officers, and numerous documents such as "passports of foreign nationals, one billion dollars in

21   'Treaty of Versailles gold certificates,' 'gold certificates issued by the Sultanate of Sulu and North

22   Borneo,' . . . offshore bank account documents" and wire transfers. Warren Decl. Ex. F. HDC

23   discovered several emails relating to EnTech business that were addressed to and from Sears' HDC

24   email address, and included his title and workplace email signature. Warren Decl. ¶ 13.

25          Shortly after returning to work, on August 27, 2010, Warren gave Sears a written reprimand

26   for violation of HDC's Information Security and Conflict of Interest Policies and HDC's Standards

27   of Conduct. Warren Decl. ¶ 15. Warren placed Sears on a "Corrective Action Plan," asking for

28

3

1   Sears to improve his time management, limit personal calls and emails, develop a system for

2   organizing assignments, and be a good team player. Sears Opp. Decl. ¶ 17; Sears Opp. Decl. Ex. I.

3   Sears felt that he was greeted by a "hostile and discriminatory" work environment, and engaged an

4   attorney to direct HDC to address multiple concerns. Sears Opp. Decl. ¶ 19. On August 30, 2010,

5   moreover, Sears sent a letter to the California Tax Credit Allocation Committee regarding

6   HACM's violation of HUD bid procedures. *Id.* ¶ 20.

7       HDC hired CSI Human Resources Group ("CSI") in September 2010 to investigate Sears'

8   complaints. *Id.* ¶ 19; Warren Decl. ¶ 9. CSI's investigation into Sears' work environment

9   substantiated some of Sears' allegations, but rejected other allegations. ECF No. 251 ("Torres

10  Decl.") Ex. A. For example, Sears complained about being issued a company phone, when HDC's

11  previous policy had been to reimburse employees for work-related usages of their personal phone.

12  *Id.* at 5. Sears stated that he was left with a cell phone contract that he could not cancel without

13  incurring fees, and all of his business contacts had his previous number. *Id.* at 12. CSI found that

14  Sears' allegation was accurate. *Id.* at 14. Sears also complained that his external hard drive was

15  taken away, which contained important data needed to perform his work duties. *Id.* at 5. CSI found

16  that Sears' allegation was true. *Id.* at 14. Finally, Sears alleged that Warren had ordered staff to not

17  give Sears keys to his desk and the back door. *Id.* at 2. CSI substantiated this complaint. *Id.* at 14.

18      CSI did not substantiate Sears' allegation that HDC's staff had been told not to

19  communicate with him, at risk of losing their jobs. *Id.* at 1, 13. None of the employees CSI

20  interviewed corroborated Sears' claim. *Id.* at 13. CSI also did not find truth in Sears' allegation that

21  Warren had been disparaging him in the community, stating that Sears provided no specific

22  evidence to support this claim. *Id.* Sears also alleged that Warren ordered Sears to not speak to Paul

23  Davis, a personal friend. *Id.* at 2. CSI found that Sears had taken Warren's direction out of context,

24  as Paul Davis was an architect working on a project from which Sears had been removed. *Id.* at 13.

25  Warren's order was limited to communicating with Davis as it relates to the project. *Id.* CSI also

26  found that Sears provided no evidence to support his assertion that he was demoted to projects not

27  befitting his educational background or experience, or that HDC was piling on unreasonable

28

**United States District Court**
For the Northern District of California

4

1    amounts of work. *Id.* at 13-14.

2        Sears also complained that Warren stated that he would be reviewed every two weeks for

3    90 days, arguing that this was a double standard without reasonable justification. *Id.* at 2. CSI did

4    not find evidence of disparate treatment or a "double standard." *Id.* at 14. Sears also alleged that

5    after Warren's promotion to CEO and President of HDC, Warren suddenly found fault with Sears'

6    performance, even though nothing was brought to his attention prior to July 19, 2010. *Id.* at 2.

7    Warren responded that she had been Sears' supervisor for years and had verbally coached him in

8    the past on his performance. *Id.* at 6. CSI did not draw any conclusion as to this allegation. *Id.* at

9    14.

10       Importantly, during the course of the investigation, female HDC employees reported that

11   Sears made inappropriate sexual comments in the workplace. Warren Decl. ¶ 10. Accordingly, CSI

12   conducted a second investigation inquiring specifically into the sexual harassment claims. *Id.* In the

13   second investigation, CSI learned that Sears had thrown a piece of candy at a female employee's

14   cleavage, frequently made comments about a temporary co-worker's chest and stared at her breasts,

15   told co-workers that he was a "boob guy," and took pictures of a co-worker's breasts, zoomed in,

16   and showed the picture to another employee. Warren Decl. Ex. D. Moreover, Warren Reed, a

17   business partner of HDC, reported that Sears had made an inappropriate sexual comment about a

18   female non-HDC employee during a construction meeting. Warren Decl. ¶ 21; ECF No. 252-2

19   ("Reed Decl.") Ex. A.

20       On September 16, 2010, Warren gave Sears a formal reprimand based on the findings of the

21   second CSI investigation and placed Sears on administrative leave. Sears Opp. Decl. ¶ 21; Warren

22   Decl. ¶ 16. Three days later, on September 19, 2010, members of HDC and HACM's board

23   received a message from Sears' business associate, Charles Miller, at their personal email address.

24   Warren Decl. ¶ 17. That same day, several board members received phone calls at their homes

25   from Miller. *Id.* The next day, another one of Sears' business associates, Michael Hinrich, wrote

26   HDC's board threatening to sue. *Id.* ¶ 18. One week later, Miller emailed the board threatening to

27   sue as well. *Id.* ¶ 19.

28

Case No.: 11-CV-1876-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT

1   While on administrative leave, Sears claims he "remained committed to getting someone to

2   take seriously the abuse, waste, and unlawful activities that [Warren] and HDC were engaged in."

3   Sears Opp. Decl. ¶ 23. Sears addressed HDC and HACM's boards on September 27, 2010, urging

4   the boards to investigate violations of HUD, HACM, and HDC procurement regulations. *Id.*

5   On October 4, 2010, Warren notified Sears of Warren's decision to terminate Sears'

6   employment at HDC. Warren Decl. ¶ 21. Pursuant to this notification, Sears was terminated that

7   same day. Sears Opp. Decl. ¶ 24. Warren asserts that she based her decision on Sears' failures to

8   comply with policies and standards, his engagement in inappropriate sexual conduct with HDC

9   employees and third parties, and his poor work performance. Warren Decl. ¶ 21.

10   On October 14, 2010, ten days after he was terminated, Sears sent a written complaint to

11   HUD's Office of the Inspector General ("OIG"). Sears Opp. Decl. ¶ 42. The complaint included

12   information about the reprisal he had discussed with OIG over the phone, the script from his

13   address to the Board of Commissioners, which occurred after his initial call, and information about

14   additional developments since their first conversation.  Sears Opp. Decl. Ex. Q. HUD OIG

15   investigators later met with Sears and eventually concluded that there was some merit to Sears'

16   allegations that HDC did not properly follow HUD protocol. Sears Opp. Decl. ¶ 57. However,

17   Sears alleges that he "never received any information about investigations into his complaints of

18   retaliation or reprisal first made in September 2010." ECF No. 208 ("TAC") ¶ 29. Plaintiff also

19   "never received from HUD OIG an explanation of a decision not to conduct an investigation into

20   his complaints of retaliation or reprisal." *Id.*

21   **B.     Procedural History**

22   Plaintiff and his wife, Brenda L. Stealy Sears, appearing *pro se*, filed a complaint on April

23   19, 2011 against HACM, HDC, Warren, and approximately two-dozen other defendants. ECF No.

24   1. Eighteen defendants moved to dismiss several of the Sears' claims in five separate motions to

25   dismiss. *See* ECF Nos. 53, 56, 61, 64, 91. On February 3, 2012, Judge Armstrong, to whom the

26   case was assigned, granted all five motions to dismiss with partial leave to amend. *See* ECF No.

27   158.

28

6

On March 5, 2012, Sears,[1] represented by counsel, filed a First Amended Complaint against HACM, HDC, Warren, the County of Monterey, and CSI. *See* ECF No. 159. Sears also filed a motion to change venue from Oakland, where Judge Armstrong is located, to San Jose. *See* ECF No. 160. Four days after filing the FAC, on March 9, 2012, Sears voluntarily dismissed then-Defendant County of Monterey. *See* ECF No. 163. On April 11, 2012, Sears filed a Second Amended Complaint asserting seven causes of action against defendants HACM, HDC, and Warren. *See* ECF No. 176. CSI was no longer included as a defendant. *See id*. Judge Armstrong granted Sears' motion to transfer on May 10, 2012, and the case was transferred to San Jose and assigned the undersigned Judge. *See* ECF No. 181.

After the case was transferred, Sears voluntarily dismissed, with prejudice, his first cause of action for violation of California Labor Code Section 1102.5 against HACM, as well as his fourth through seventh causes of action against all remaining defendants. *See* ECF No. 187. Sears subsequently dismissed HACM altogether. *See* ECF No. 203. The Court set a case schedule on August 29, 2012. *See* ECF No. 189. Under that case schedule, fact discovery was set to close on April 25, 2013 with expert discovery to close on June 6, 2013. *See id*

On August 31, 2012, HDC and Warren filed a motion to dismiss the Second Amended Complaint. *See* ECF No. 190. In this motion, HDC and Warren sought to dismiss Sears' (1) first cause of action to the extent it alleges a violation of California Labor Code Section 1102.5, which prohibits an employer from retaliating against an employee for providing information of alleged illegal conduct to law enforcement agencies; and (2) second cause of action alleging whistleblower retaliation in violation of American Recovery and Reinvestment Act ("ARRA"). *Id.*

On January 23, 2013, this Court granted HDC and Warren's motion to dismiss with leave to amend because Plaintiff failed to exhaust his administrative remedies. *See* ECF No. 207. The Court noted that Sears filed complaints over the internet with the HUD OIG alleging violations by HACM, HDC, and Warren "[b]efore October 4, 2010" and "in or about September to November 2010." *Id.* at 9. The Court, however, dismissed the ARRA claim because the SAC "fail[ed] to show

---

[1] Sears' wife is no longer a party to the case. *See* ECF No. 159.

7

United States District Court
For the Northern District of California

1   that Plaintiff filed a complaint with the HUD Inspector General regarding the alleged retaliation, a

2   requirement if Plaintiff is to show Plaintiff exhausted his administrative remedies." *Id.* at 10.

3   However, the Court granted Sears leave to amend as to the ARRA claim to allow Sears to allege

4   facts showing that Sears filed a complaint with the HUD Inspector General alleging whistleblower

5   retaliation. *Id.*

6          On February 11, 2013, Sears filed his TAC against HDC and Warren. *See* ECF No. 208.

7   Sears alleged the following causes of action: (1) violation of California Labor Code Section 1102.5

8   and for wrongful termination in violation of public policy based on the aforementioned violation of

9   Section 1102.5 (against HDC), *see* TAC ¶¶ 39-40; (2) whistleblower retaliation in violation of the

10  ARRA (against HDC and Warren), *see* TAC ¶¶ 47-55; and (3) whistleblower retaliation in

11  violation of the False Claims Act (against HDC), *see* TAC ¶¶ 56-63.

12         On February 22, 2013, HDC and Warren moved to dismiss the second cause of action—

13  whistleblower retaliation in violation of ARRA—on the grounds that Sears failed to exhaust his

14  administrative remedies as to this claim. *See* ECF No. 209-1. On April 3, 2013, the Court extended

15  the deadline for discovery (both fact and expert) to September 12, 2013. *See* ECF No. 218. The

16  Court granted Defendants' motion to dismiss with prejudice on August 22, 2013, because Sears

17  had not adequately alleged exhaustion despite several opportunities to do so. *See* ECF No. 230.

18  This effectively dismissed Defendant Warren from the case, since the ARRA cause of action was

19  the only cause of action to which she was a defendant. The first cause of action (for violation of

20  Section 1102.5 and wrongful termination in violation of public policy) and third cause of action

21  (for False Claims Act retaliation) survived the various motions to dismiss. The Court then granted

22  stipulations to continue the discovery deadlines through February 13, 2014. *See* ECF No. 232.

23         On February 25, 2014, HDC filed its Motion for Summary Judgment. ECF No. 250. On

24  March 13, 2014, Sears filed an Opposition to HDC's Motion for Summary Judgment. ECF No.

25  267.[2] On March 14, 2014, Sears filed an Ex Parte Motion to deem the Opposition as timely filed,

26  _____

27  [2] In connection with Sears' Opposition, Sears filed an Objection to Defendant's Evidence
    Submitted in Support of its Motion for Partial Summary Judgment. *See* ECF No. 270. Local Rule
    7-3(a) provides that all evidentiary objections "to [a] motion must be contained within the brief or

28  memorandum." Accordingly, the Court OVERRULES Sears' evidentiary objections that are not

8

Case No.: 11-CV-1876-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT

1    which HDC has opposed.[3] *See* ECF Nos. 288, 293, 296. On March 20, 2014, HDC filed a Reply in

2    support of its Motion for Summary Judgment. *See* ECF No. 298.

3            On March 7, 2014, three weeks after the close of discovery and on week after a dispositive

4    motion had been filed, Sears filed a Motion for Leave to File a Fourth Amended Complaint,

5    seeking to add a cause of action for defamation against HDC and to re-add Starla Warren (who had

6    been dismissed as a party on August 22, 2013) as a defendant. *See* ECF No. 264. On March 19,

7    2014, HDC filed an Opposition to Sears' Motion for Leave to Amend. *See* ECF No. 297. On

8    March 21, 2014, Sears filed a Reply in support of his Motion for Leave to Amend. *See* ECF No.

9    300.

10   **II.    LEGAL STANDARD**

11          **A.    Motion for Summary Judgment**

12          Summary judgment is appropriate if, viewing the evidence and drawing all reasonable

13   inferences in the light most favorable to the nonmoving party, there are no genuine disputed issues

14   of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a);

15   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it "might affect the

16   outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if

17

18   _____

     raised in the Opposition. In its Reply in support of the Motion for Summary Judgment, HDC raises
     several evidentiary objections to exhibits introduced by Sears in support of his opposition. To the
19   extent the Court relies upon particular evidence, the Court addresses HDC's objections in the
     Discussion section. *See supra* Section III.
20   [3] In the Ex Parte Motion, Sears' counsel contends that various declarations in support of the
     Opposition, which were filed on March 14, 2014, were untimely by a couple of hours due to
21   problems with electronic case filing. *See* ECF No. 288. HDC opposes Sears' Ex Parte Motion on
     the grounds that the deadline to file the Opposition was March 11, 2014, not, as Sears' counsel
22   believes, March 13, 2014. *See* ECF No. 293. In a Reply, Sears' counsel suggests that HDC
     deliberately filed its Motion for Summary Judgment early to prejudice Sears. *See* ECF No. 296.
23   HDC has the better of the arguments. The Court's Case Management Order, ECF No. 249, set the
     *last day* to file dispositive motions as February 27, 2014. In fact, HDC filed its Motion for
24   Summary Judgment on February 25, 2014. This was within HDC's rights. The Opposition was due
     fourteen days from the date of the Motion, which would have been March 11, 2014. *See* Civil L. R.
25   7-3(a). HDC, when it filed its Motion, appropriately docketed the deadline for Opposition as March
     11, 2014. *See* ECF No. 250 ("Responses due by 3/11/2014"). Nonetheless, the Court GRANTS
26   Sears' Ex Parte Motion for a three day extension. HDC has suffered no prejudice from the
     untimely filing. This Court issued an order to ensure that HDC would have seven days from the
27   date of the untimely Opposition to file HDC's Reply, which is the time period the Local Rules
     contemplate. *See* ECF No. 295. Further, the Court finds that it would be unfair to preclude Sears
28   from responding to a dispositive motion because of his counsel's error.

                                                        9
     Case No.: 11-CV-1876-LHK
     ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
     MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT

**United States District Court**
For the Northern District of California

1    there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party.

2    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or

3    is not significantly probative," the court may grant summary judgment. *Id.* at 249-50 (citation

4    omitted). At the summary judgment stage, the Court "does not assess credibility or weigh the

5    evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*,

6    547 U.S. 518, 559-60 (2006).

7            The moving party has the burden of demonstrating the absence of a genuine issue of fact for

8    trial. *Celotex*, 477 U.S. at 323. To meet its burden, "the moving party must either produce evidence

9    negating an essential element of the nonmoving party's claim or defense or show that the

10   nonmoving party does not have enough evidence of an essential element to carry its ultimate

11   burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099,

12   1102 (9th Cir. 2000) (citation omitted). Once the moving party has satisfied its initial burden of

13   production, the burden shifts to the nonmoving party to show that there is a genuine issue of

14   material fact. *Id.* at 1103.

15           **B.    Leave to Amend**

16           Under Federal Rule of Civil Procedure 15(a), a party may amend its complaint "once as a

17   matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a).

18   Thereafter, a party may amend only by leave of the court or by written consent of the adverse

19   party. *Id.* Rule 15(a), however, instructs that "leave shall be freely given when justice so requires."

20   *Id.; see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).

21           Leave to amend should be granted where there is no "undue delay, bad faith or dilatory

22   motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

23   allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and]

24   futility of the amendment [.]" *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th

25   Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *Zucco Partners, LLC v. Digimarc

26   Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).

27           Ultimately, the grant or denial of an opportunity to amend is within the discretion of the

28

Case No.: 11-CV-1876-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT

1    district court. *Foman*, 371 U.S. at 182 ("district court may properly deny leave to amend but

2    outright refusal to grant leave without any justifying reason is not an exercise of discretion");

3    *Eminence Capital*, 316 F.3d at 1051-52 (underlying purpose of Rule 15 is to "facilitate decision on

4    the merits, rather than on the pleadings or technicalities"). The district court has particularly broad

5    discretion to deny leave to amend where plaintiff has previously amended the complaint. *Allen v.*

6    *City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990); *accord Sisseton-Wahpeton Sioux Tribe v.*

7    *United States*, 90 F.3d 351, 356 (9th Cir. 1996) (denying leave to amend complaint where the

8    plaintiff conceded that the proposed amendments are similar to the existing claims already asserted

9    in the second amended complaint).

### III.    DISCUSSION

#### A.    False Claims Act Claim

12          HDC argues that it is entitled to summary judgment as to Sears' FCA claim because: (1)

13   Sears has not introduced evidence to establish a *prima facie* case of retaliation; (2) HDC had

14   legitimate non-retaliatory reasons for terminating Sears; and (3) Sears has not introduced evidence

15   to demonstrate that HDC's explanation for terminating Sears is mere pretext for impermissible

16   retaliation. Mot. at 18-24. Sears argues that HDC's discrimination against residents or beneficiaries

17   of federal HUD funds, engaging in improper practices relating to the bidding process for certain

18   HACM housing projects, and creating false documents all constitute making false claims to the

19   federal government. Opp. at 12; *see also* Sears Opp. Decl. Furthermore, Sears alleges that HDC

20   had knowledge of his belief that the conduct alleged constituted a false claim, and that Sears was

21   terminated in retaliation for his protected activity. Opp. at 12. In its Reply, HDC responds that

22   Sears did not present evidence with regard to the issue of pretext, which is dispositive of his

23   retaliation claim. Reply at 3. As explained below, the Court agrees with HDC.

24          "Congress added 31 U.S.C. § 3730(h) to the FCA in 1986 to protect 'whistleblowers,' those

25   who come forward with evidence their employer is defrauding the government, from retaliation by

26   their employer." *U.S. ex rel. Hopper v. Anton,* 91 F.3d 1261, 1269 (9th Cir. 1996). The FCA

27   protects employees from being "discharged, demoted, . . . or in any other manner discriminated

28

United States District Court
For the Northern District of California

11

1   against in the terms and conditions of employment . . . because of lawful acts done by the

2   employee . . . in furtherance of an [FCA] action . . . , including investigation for, initiation of,

3   testimony for, or assistance in an [FCA] action. . . ." 31 U.S.C. § 3730(h). An FCA retaliation

4   claim requires proof of three elements: "1) the employee must have been engaging in conduct

5   protected under the Act; 2) the employer must have known that the employee was engaging in such

6   conduct; and 3) the employer must have discriminated against the employee because of her

7   protected conduct." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1060 (9th

8   Cir. 2011).

9          The Ninth Circuit has not expressly determined whether the *McDonnell-Douglas* burden-

10  shifting analysis utilized by the courts in analyzing retaliation claims under Title VII of the Civil

11  Rights Act also applies to whistleblowing claims under the FCA. *See McDonnell-Douglas Corp. v.*

12  *Green*, 411 U.S. 792 (1973). However, many other courts have extended the *McDonnell-Douglas*

13  framework to FCA retaliation claims. *See Harrington v. Aggregate Indus. Ne. Region, Inc.*, 668

14  F.3d 25, 30-31 (1st Cir. 2012) (collecting cases); *see also U.S. ex rel. Berglund v. Boeing Co.*, 835

15  F. Supp. 2d 1020, 1040 (D. Or. 2011); *Neighorn v. Quest Health Care*, 870 F. Supp. 2d 1069, 1092

16  (D. Or. 2012). Moreover, in other contexts, the Ninth Circuit has imported Title VII doctrine to the

17  FCA retaliation context. *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 847-48

18  (9th Cir. 2002) (conduct does not constitute "retaliation" under the FCA unless it would be

19  sufficient to constitute an adverse employment action under Title VII).

20         The Court will therefore apply the *McDonnell-Douglas* balancing analysis here. Under that

21  analysis, Sears bears the initial burden of establishing a *prima facie* case for retaliation under the

22  FCA. That is, Sears must make an initial showing as to the three elements described in *Cafasso*

23  (protected activity, employer knowledge, and causation).  *Balmer v. HCA, Inc.*, 423 F.3d 606, 613

24  (6th Cir. 2005) *abrogated in part on other grounds by Fox v. Vice*, 131 S. Ct. 2205 (2011) (noting

25  that a *prima facie* case of FCA retaliation requires evidence that the plaintiff engaged in protected

26  activity, that the defendant knew of the exercise of plaintiff's protected rights, that defendant took

27  an employment action adverse to plaintiff, and that there was some causal connection between the

28

Case No.: 11-CV-1876-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT

*United States District Court*
For the Northern District of California

protected activity and the adverse employment action); *see also Harrington*, 688 F.3d at 31-32

(holding that to clear the "low bar" required to establish a prima facie case, plaintiff must present

evidence as to the protected activity element, the knowledge element, and the causation element).

If Sears makes this *prima facie* showing, the burden of production shifts to HDC to articulate a

legitimate, non-retaliatory explanation for the adverse employment action. *Berglund*, 835 F. Supp.

2d at 1040. If HDC successfully rebuts the inference of retaliation, the burden of production shifts

back to Sears to demonstrate that HDC's proffered explanation is merely a pretext for

impermissible retaliation. *Id.*

        In the instant case, the Court need not reach whether Sears establishes a *prima facie* case,

because Sears fails to raise a material factual dispute as to pretext. Accordingly, the Court will

assume for purposes of this Motion that Sears has established a *prima facie* case. *See Vasquez v.

Cnty. of L.A.*, 349 F.3d 634, 642 (9th Cir. 2003) ("[E]ven assuming that [plaintiff] could establish

his prima facie case, his claim would fail because he could not show that [defendant's] reason was

a pretext for discriminatory intent."). The Court thus begins by describing the evidence of HDC's

non-discriminatory reasons for terminating Sears, and then turns to the evidence of pretext.

### 1.        Non-Discriminatory Reason for Termination

        Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the

employer to offer a legitimate, non-retaliatory reason for the adverse employment

decision. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). This burden is

one of production, not persuasion. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993).

HDC argues that Sears was terminated for several non-retaliatory reasons: Sears' (1) sexual

harassment of female co-workers; (2) use of work computer to conduct personal business; (3)

disclosure of confidential contact information; and (4) poor work performance. Mot. at 13-16. The

Court will address these reasons for termination in further detail.

#### a)        Sexual Harassment

        HDC provides evidence indicating that both HDC employees and HDC's business partners

raised concerns about Sears' engaging in unprofessional, inappropriate sexual conduct. HDC

Case No.: 11-CV-1876-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT

United States District Court
For the Northern District of California

1    contends that two female HDC employees raised concerns about inappropriate sexual comments by

2    Sears during CSI's initial investigation of Sears' working conditions, which was prompted by Sears

3    himself. Sears Opp. Decl. ¶ 19; Torres Decl. ¶ 2. CSI interviewed the two female employees and

4    found that Sears had thrown a piece of candy at a female employee's cleavage, frequently made

5    comments about a temporary co-worker's chest and stared at her breasts, told co-workers that he

6    was a "boob guy," and took pictures of a co-worker's breasts, zoomed in, and showed the picture to

7    another employee. Torres Decl. Ex. B. at 20-24. The interviewed employees also made reference to

8    an incident where Sears stared at the breasts of a co-worker who was walking up the stairs and

9    tightening the strings to her blouse. *Id.* at 20, 22. Sears laughed when the co-worker told him,

10   "That's disgusting. You didn't have to stand there watching, you could have walked over to your

11   desk." *Id.* at 20. As a result of this conduct, CSI concluded that Sears had engaged in inappropriate

12   conduct. *Id.* at 19.

13         Moreover, in September 2010, Warren Reed, one of HDC's business partners, wrote HDC

14   an email stating that during a construction meeting, Sears made a "few inappropriate and

15   unprofessional comments regarding a woman's physical characteristics, which were sexual in

16   nature." Reed Decl. ¶ 2. Reed noted that "other [female] staff who were present . . . did also

17   mention . . . that [Sears'] comments made them very uncomfortable." Reed Decl. Ex. A.

18         As courts have long recognized, this type of sexual harassment is a legitimate, non-

19   retaliatory reason for termination. *See Byrnes v. Lockheed Martin Corp.*, 257 Fed. App'x 34, 35

20   (9th Cir. 2007); *Wade v. Roper Industs.*, No. 13-3885, 2013 WL 6732071, at *4 (N.D. Cal. Dec.

21   30, 2013); *Kraus v. Presidio Trust Facilities Div./Residential Mgmt. Branch*, 704 F. Supp. 2d 859,

22   867 (N.D. Cal. 2010). The Court therefore finds that HDC has met its burden of production as to

23   the sexual harassment rationale for Sears' termination.

24                    **b)    Use of Work Computer for Business**

25         While Sears was on administrative leave in July and August 2010, HDC employees

26   accessed Sears' workplace computer to look for documents. Warren Decl. ¶ 11. HDC discovered

27   business documents related to EnTech, Inc., a corporation of which Sears and his wife, were

28

14

officers, and numerous documents such as "passports of foreign nationals, one billion dollars in 'Treaty of Versailles gold certificates,' 'gold certificates issued by the Sultanate of Sulu and North Borneo,' . . . offshore bank account documents" and wire transfers. Mot. at 14; Warren Decl. Ex. F. HDC discovered several emails relating to EnTech business that were addressed to and from Sears' HDC email address, and included his title and workplace email signature. Warren Decl. ¶ 13. This gave HDC the impression that Sears was utilizing workplace computers for personal business, in violation of their HDC Information Security and Conflict of Interest Policies. Mot. at 15. HDC states that because Sears used his HDC work email address, the emails gave the impression of being sanctioned by HDC or affiliated with HDC's official business. *Id.*; Warren Decl. ¶¶ 13-14. Furthermore, because government agencies regularly audit HDC in connection with HDC's receipt of state and federal funding, Sears' emails "could create an impression of impropriety by HDC and could force HDC to use its limited resources, not in providing low income housing, but explaining why such documents were on its computers." Mot. at 15; Warren Decl. ¶ 14.

Misuse of workplace computers or resources is generally a legitimate, non-retaliatory reason for termination. *See Coons v. Secretary of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004); *Twymon v. Wells Fargo Co.*, 462 F.3d 925, 935 (8th Cir. 2006). The Court therefore finds that HDC has met its burden of production with regard to the misuse of workplace computers rationale for terminating Sears' employment.

### c)   Disclosure of Confidential Contact Information

HDC placed Sears on administrative leave for a second time on September 16, 2010. Warren Decl. ¶ 16. Three days later on September 19, 2010, HDC and HACM board members received an email from Charles C. Miller, who represented himself to be Sears' business associate and a consultant to Sears' corporation, EnTech Inc. *See* ECF No. 250-3 ("Styles Decl."); 251-2 ("Williams Decl."); 252-1 ("Espinoza Decl."). The emails were sent to the board members' private email addresses. Styles Decl. ¶ 2; Williams Decl. ¶ 2; Espinoza Decl. ¶ 2. Miller's email stated that EnTech had been "slandered" by Warren, that Warren's action had the "possibility to affect a $932 million transaction which would attach liability to [Monterey County Housing Authority,] HDC

15

United States District Court
For the Northern District of California

1    and all directors personally," and demanded a board meeting the next day "to mitigate damages any

2    further." Styles Decl. Ex. A. Styles, Williams, and Espinoza all received phone calls on the

3    weekend from Miller at their home phone numbers. Styles Decl. ¶ 2; Williams Decl. ¶ 2; Espinoza

4    Decl. ¶ 2. These phone numbers were made available to HDC, but were expected by the board

5    members to be kept confidential. Styles Decl. ¶ 3; Williams Decl. ¶ 3; Espinoza Decl. ¶ 3.

6        On September 20, 2010, another business associate of Sears, Michael Hinrich, wrote the

7    HDC board threatening to sue for Warren's allegedly slanderous comments about his company.

8    Warren Decl. Ex. P.  One week later on September 27, 2010, Miller sent an email to the board

9    titled "Failure to Act, Notice of Suit," that threatened a lawsuit against the board for failure to

10   mitigate injuries to EnTech, and gave the board 72 hours to "attempt corrections and mitigate the

11   compounding and accumulating damages if possible." Williams Decl. Ex. B. Styles, Williams, and

12   Espinoza all stated that Miller's communications with the board were concerning, given that these

13   communications threatened HDC. Styles Decl. ¶ 5; Williams Decl. ¶ 5; Espinoza Decl. ¶ 5.

14       The HDC board members' email addresses and phone numbers were confidential, and

15   Sears was not authorized to disclose this information. Warren Decl. ¶ 17. Warren stated that she

16   was concerned that the threatening emails could jeopardize funding for HDC and force HDC to

17   expend resources defending against litigation. *Id.* ¶ 20. Warren was also concerned that this would

18   reflect poorly on HDC during a government audit. *Id.*

19       The disclosure of confidential information is a legitimate, non-retaliatory basis for

20   termination. *Duncan v. U.S. Sec'y of Labor*, 69 Fed App'x 822, 823 (9th Cir. 2003); *Mitchell v.*

21   *Superior Ct. of Cal. Cnty. of San Mateo*, 312 Fed. App'x 893, 895 (9th Cir. 2009). The Court

22   therefore finds that HDC has met its burden of production as to the disclosure of confidential

23   information rationale for Sears' termination.

24                          **d)**     **Poor Work Performance**

25       HDC had documented examples of Sears' poor work performance. In March 2010, Warren

26   reprimanded Sears for not placing files on the shared drive and admonished Sears that Sears should

27   use his external hard drive only for drawings and photos. Warren Decl. Ex. E; Sears Opp. Decl. Ex.

28

16

1    F, at 2. On July 19, 2010, HDC issued a "Preliminary Notice of Proposed Termination Action" that

2    detailed multiple issues with Sears' preparation of tax credit applications for two development

3    projects, including creating illegible documents, not placing documents on networked drives for

4    other employees, and delays in soliciting necessary information from municipalities. Warren Decl.

5    Ex. A; Warren Decl. ¶ 7. The notice stated that Sears' "job performance over the past couple of

6    years has been reaching an unacceptable level." Warren Decl. Ex. A. Sears was immediately put on

7    administrative leave until August 27, 2010. Warren Decl. ¶ 8, 11. Sears appealed from the July 19,

8    2010 notice and was ultimately not terminated. Warren Decl. ¶ 8.

9            Two of HDC's development partners also expressed an unwillingness to work with Sears.

10   The executive director of the Housing Authority of the City of Paso Robles wrote an email to HDC

11   on August 23, 2010, requesting that Sears not be assigned to work on a specific development

12   project. ECF No. 250-4 ("Corella Decl.") Ex. A. Paul Davis, an architect working with HDC on

13   various development projects, wrote HDC an email on August 26, 2010, stating "it was

14   uncomfortable . . . having conversations with [Sears] regarding the projects I'm involved with. . . .

15   I think it would be best for the design team to continue on without [Sears] involved." ECF No. 252

16   ("Davis Decl.") Ex. A.

17          The Court finds that HDC has met its burden of production as to the poor job performance

18   rationale for Sears' termination.

19                           **2.      Pretext**

20          A plaintiff can demonstrate that a defendant's proffered reasons for a challenged action are

21   pretextual if the plaintiff introduces "sufficient evidence to create a genuine issue as to whether

22   retaliation was the real motive underlying his dismissal." *Harrington,* 668 F.3d at 31. A plaintiff

23   must present "specific, substantial evidence of pretext" to defeat a motion for summary judgment.

24   *Johnson v. Lockheed Martin Corp.*, No. 11-1140, 2012 WL 2917944, at *8 (N.D. Cal. July 17,

25   2012). "[W]eaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

26   employer's proffer" can give rise to an inference of pretext, as well as deviations from standard

27   procedures and close temporal proximity between the employee's termination and employee's

United States District Court
For the Northern District of California

28

17

Case No.: 11-CV-1876-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT

1    whistleblowing. *Harrington*, 668 F.3d at 33 (quoting *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323

2    (10th Cir. 1997)); *cf. Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) (noting that

3    with regard to temporal proximity, there is no bright line rule for how much time is considered to

4    be "too long" to support an inference of retaliation). To avoid summary judgment, a plaintiff must

5    produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's

6    proffered nondiscriminatory reasons is pretextual. *See Chapman v. AI Transport*, 229 F.3d 1012,

7    1037 (11th Cir. 2000); *Ghosh v. Indiana Dep't of Envtl. Mgmt.*, 192 F.3d 1087, 1092 (7th Cir.

8    1999).

9            In this case, Sears makes three arguments for why the non-retaliatory reasons proffered by

10   HDC are pretextual: (1) there was a close "temporal proximity" between his whistleblower

11   comments and the adverse employment actions taken by HDC; (2) Sears was a victim of "disparate

12   treatment" as compared to other employees; and (3) CSI's investigation into the workplace

13   conditions at HDC was biased against him. Sears Opp. Decl. ¶¶ 11, 18, 19, 24; Opp. at 11. Sears

14   addresses the misuse of workplace computers and sexual harassment allegations, but does not

15   directly address the disclosure of confidential information or the poor job performance described

16   by HDC. The Court will address each of Sears' theories in turn.

17                      a)         **Temporal Proximity**

18           First, Sears offers a "temporal proximity" argument to support an inference of pretext.

19   Sears alleges that Warren knew of Sears' complaints of HDC's "unlawful conduct and violations of

20   federal procurement regulations" and subjected him to adverse actions "within months" of his

21   protected activities. Opp. at 12.

22           Sears states that he began to speak out against practices that he believed were unlawful or in

23   violation of federal regulations "early in 2009." Sears Opp. Decl. ¶ 9. For example, in June 2009,

24   Sears allegedly complained to Richard Russo, Manager of the HACM Force Account, of bid-fixing

25   in connection with a copper electrical wiring project at one of HDC's developments. *Id.* ¶ 32. Sears

26   contends that this bid-fixing was in violation of HUD's regulations. *Id.* ¶ 33.

27           Sears alleges that a similar bid-fixing incident took place in July 2010. Sears states that he

28

Case No.: 11-CV-1876-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT

had a long-planned two week vacation from July 3, 2010 to July 18, 2010. *Id.* ¶ 13. Immediately prior to the vacation, Sears protested to Warren and John Curro, a consultant working with HDC, that he felt that HDC was engaging in bid-fixing with regards to two development projects, which would violate HUD regulations. *Id.* ¶¶ 14, 37. Sears notes that HDC's initial decision to place him on administrative leave, pending an appeal of HDC's preliminary notice to terminate, occurred the day after he returned from vacation. *Id.* ¶ 15. Sears' appeal was successful, and he was reinstated to his former position with the same compensation as before. *Id.* ¶ 16. However, after returning from administrative leave on August 27, 2010, Sears received a "Welcome Back" letter that reduced his responsibilities and a formal reprimand for his employment record. *Id.* ¶ 17.

Sears states, "At this point [August 27, 2010], I had not even worked a month with HDC, so it is unclear how [Warren] would have 'so much data' on my negative performance." *Id.* ¶ 18. Sears also voiced his concerns about HDC's alleged procurement violations to the HDC board of directors on September 27, 2010, and HDC terminated his employment approximately one week later. *Id.* ¶¶ 24, 40.

Sears' argument as to temporal proximity misrepresents the record. Sears expresses incredulity at how Warren would have accumulated extensive negative data on his work performance in August 2010 when "[he] had not even worked a month with HDC." *Id.* ¶ 18. This statement ignores that Sears had been working at HACM since October 2006, and that HDC is simply the former development unit of HACM. Warren Decl. ¶ 6. This unit broke off from HACM in June 2010 after HDC was incorporated as its own non-profit entity. *See* Sears Opp. Decl. Ex. A (indicating that his supervisor at HACM was also Starla Warren); Sears Opp. Decl. Ex. D. There was a complete continuity of operations in staff, directors, job assignments, and compensation between the former development department at HACM and its new form, HDC. Warren Decl. ¶ 6; Sears Opp. Decl. Ex. D. Sears' attempt to cast doubt on HDC's ability to develop an extensive employment record by narrowing the relevant time period of review to the less than four months between June 28, 2010 (the date of Sears' transfer to HDC) to October 4, 2010 (the date of Sears' termination) is disingenuous. Sears Opp. Decl. ¶¶ 13, 24. The more relevant time period is from

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    October 2006 to October 2010, a four-year period.

2         Importantly, Sears also fails to establish the temporal linkage between many of his

3    whistleblowing activities and his termination. Sears allegedly engaged in protected activity since

4    2009, *see id.* ¶ 9, but does not introduce any evidence that links his 2009 bid-fixing complaint, *see*

5    *id.* ¶ 32, to Warren's decision to terminate him a year later in October 2010. Moreover, his

6    complaints to the HUD OIG in August 2010 and October 2010 and his complaints to the HDC

7    board in September 2010, *see id.* ¶¶ 40, 41, all postdated Warren's decision to place Sears on

8    administrative leave on at least one occasion for poor performance in July 2010, and in some cases,

9    after Warren's decision to place Sears on administrative leave for a second occasion after the CSI

10   investigation in September 2010. *Id.* ¶ 15. Sears cannot allege retaliation for whistleblower activity

11   made after an adverse employment decision had already been rendered. *See Ferretti v. Pfizer Inc.*,

12   No. 11-4486, 2013 WL 140088, at *15 (N.D. Cal. Jan. 10, 2013) ("The proximity requirement is

13   met where a series of adverse employment actions begins shortly *after* a plaintiff engages in

14   protected activity." (emphasis added)).

15        Finally, Sears' most persuasive example of "temporal proximity" is completely undermined

16   by his own evidence. Sears seems to contend that the triggering event for HDC's adverse

17   employment actions was his complaint to Warren and Curro in July 2010 about bid-fixing for two

18   development projects right before his vacation in early July 2010. *Id.* ¶ 15. Sears emphasizes that

19   he received the preliminary notice of termination "the day after my return from vacation." *See id.*

20   However, this obscures that Warren issued the termination notice as a direct result of Sears'

21   failures to adequately complete important state funding applications prior to departing for this

22   "long-planned" vacation. Sears Opp. Decl. Ex. E; Sears Opp. Decl. ¶ 13. Neither the preliminary

23   notice from Warren, nor Sears' appeal, makes any reference to bid-fixing or retaliation. Sears Opp.

24   Decl. Ex. E; Sears Opp. Decl. Ex. F. Instead, both the preliminary notice and response detail and

25   dispute specific problems that arose during Sears' vacation with regard to organization and

26   accessibility of the project files, illegibility of the prepared documents, problems with budget

27   calculations, and Sears' failure to solicit necessary information from municipal partners. Sears

28

20

United States District Court
For the Northern District of California

1    Opp. Decl. Ex. E; Sears Opp. Decl. Ex. F. The preliminary notice further states that HDC had

2    reprimanded Sears for his lack of organization and failure to make project files accessible in the

3    past. Sears Opp. Decl. Ex. E; Warren Decl. Ex. E. The notice and response introduced by Sears in

4    support of his Opposition do not create a genuine issue of material fact as to whether HDC's

5    rationale for taking adverse employment actions against Sears was legitimate and non-retaliatory.

6         For the reasons discussed above, the Court concludes that Sears has failed to raise a genuine

7    issue of material fact as to his "temporal proximity" theory.

8                              **b)      Disparate Treatment**

9         Sears argues that HDC's retaliatory motive is evidence from the disparate treatment he

10   received in comparison to his co-workers. Opp. at 10. Evidence demonstrating disparate treatment

11   by an employer is probative of pretext. *Vasquez v. Cnty of L.A.* 349 F.3d 634, 641 (9th Cir. 2003).

12   Individuals are similarly situated when they have similar jobs and display similar conduct. *Id.* at

13   641. Sears specifically asserts that other co-workers misused workplace computers and engaged in

14   unprofessional, inappropriate sexual behavior in the workplace. Sears' disparate treatment

15   argument fails, as the evidence in support of each argument fails to create a genuine issue of

16   material fact for the reasons stated below.

17                           **(1)      Misuse of Workplace Computers**

18        With regard to the misuse of workplace computers, Sears introduces deposition testimony

19   "of two other colleagues establish[ing] that they regularly checked their personal emails during

20   office hours." Opp. at 11.[4] In reviewing the record, Sears appears to be referring to the depositions

21   of HDC employees Carolina Sahagun and Kimmy Nguyen. Gaspar Decl. Ex. E ("Sahagun

22   Depo."); Gaspar Decl. Ex. F ("Nguyen Depo.").[5] Sahagun admits to having Sears burn a CD with

23

24   [4] HDC moves to strike Exhibits A and C-K to the Gaspar declaration, which are voluminous
     deposition transcripts, arguing that Sears' failure to cite specific pages and lines "makes it difficult,
     if not impossible, for HDC to assert any objections to this evidence." While the Court is loathe to
25   accept such vague citations from Sears' counsel, the Court DENIES HDC's request to strike these
     exhibits, as striking such documents would completely undermine Sears' ability to defend against
26   the instant motion.
     [5] Sears makes general reference to exhibits filed with a declaration from his attorney, Erika M.
27   Gaspar, but gives no direct citation or further clarification as to what evidence he is relying upon to
     support his assertion. Opp. at 11.
28                                                    21

United States District Court
For the Northern District of California

1  pictures with her son, and admits to sending personal emails at work during her lunch break.

2  Sahagun Depo. 81:15-22; 84:13-19. Nguyen also admits to checking personal emails while at

3  work, though it is not clear from Nguyen's deposition whether she checked emails during breaks or

4  during work hours. Nguyen Depo. 40:8-41:10. Sears also seems to introduce evidence suggesting

5  that Sahagun conducted non-HDC business at the workplace. Specifically, it appears that Sahagun,

6  in her capacity as a notary public, notarized documents for Sears' EnTech, Inc. business. Sahagun

7  Depo. 51:4-7.

8          The Court is not persuaded that this evidence creates a genuine issue of material fact for

9  two reasons. First, the record does not support Sears' contention that Sears' actions were similar to

10  that of Nguyen and Sahagun. While Sears was on administrative leave, HDC discovered hundreds

11  of pages of personal business documents. Warren Decl. ¶ 11. This included passports of foreign

12  nationals, gold certificates, silver certificates allegedly worth millions of dollars in the Philippines,

13  offshore bank account documents, and wire transfers. *Id.*; Warren Decl. Ex. F. These documents

14  are entirely unconnected to HDC business, and HDC was concerned that "third parties could easily

15  conclude that Sears was transacting HACM/HDC business." Warren Decl. ¶ 13. Sahagun and

16  Nguyen's checking personal emails do not implicate the same concerns of an appearance of

17  impropriety to third parties.

18          Unlike Sahagun's and Nguyen's actions, which did not clearly violate any workplace

19  policy, Sears' conduct violates multiple clear HDC policies, such as the Conflict of Interest Policy

20  and HDC Standard of Conduct. *Id.* ¶ 15; Warren Decl. Ex. H, I, J.[6] The Conflict of Interest Policy

21  required Sears to not engage in outside business without prior disclosure to HDC. Warren Decl. Ex.

22  I. Finally, the Standards of Conduct prohibited the unauthorized use of office equipment, and

23  prohibited any conduct that would reflect adversely on HDC. Warren Decl. Ex. J. Sears denies

24  knowing about the existence of these policies, *see* Sears Opp. Decl. ¶ 21, but does not introduce

25  evidence to refute that HDC's board adopted these policies in 2009, and these policies applied to

26
27
28

---

[6] In addition, HDC's Information Security Policy forbids the use of HDC computer resources to conduct personal business. Warren Decl. Ex. G. The record is clear that Sears violated this policy as well, though the record is not clear as to whether Nguyen's checking of personal emails at work violated these policies as well.

Case No.: 11-CV-1876-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT

United States District Court
For the Northern District of California

1    all employees. Warren Decl. Ex. K; Warren Decl. ¶ 15.

2         Second, Sears' misuse of workplace computers implicated HDC much more strongly than

3    did any of Nguyen or Sahagun's personal uses. The deposition testimony does not establish that

4    Nguyen's or Sahagun's emails or notarizations were being conducted during business hours. In

5    contrast, emails found on Sears' workplace computer show that Sears sent non-HDC business

6    emails during work hours from his HDC email. Warren Decl. Ex. F, at 18, 32; ECF No. 259 at 16-

7    20. These emails featured his HDC business contact information and title in his email signature

8    block. *Id.* The Court finds that Sears has not established pretext with regard to HDC's rationales for

9    termination because the evidence does not indicate that Sahagun and Nguyen are similarly situated

10   to Sears in their misuse of workplace resources. *See Vasquez*, 349 F.3d at 641 (requiring similar

11   conduct to establish disparate treatment).

12                        **(2)   Sexual Harassment**

13        The Court is also not persuaded by Sears' disparate treatment argument with regard to

14   sexual harassment in the workplace. Sears argues that "sexual jokes and comments were accepted

15   as the norm and not taken seriously short of a formal complaint." Opp. at 11. Again, Sears appears

16   to be relying upon the depositions of HDC employees Sahagun and Nguyen to support his

17   assertions. The depositions, however, demonstrate either no recollection or outright denials of

18   inappropriate, sexually tinged behavior or comments between Sahagun, Nguyen, and other

19   employees. Sahagun Depo. 90:22-91:18, 92:22-93:23; Nguyen Depo. 23:2-5, 17-23. For example,

20   Sahagun testifies that she would give coworkers a hug goodbye before leaving for a long weekend,

21   but that she stopped giving Sears hugs "when he got out of hand." Sahagun Depo. 74:16-75:2.

22   Sahagun noted that the coworkers attended many out-of-office, after hours events at bars, but could

23   not recall an instance that involved strippers. Sahagun Depo. 91:2-18. Sahagun did not allege that

24   any events took place at HDC or during work hours. Sahagun admitted to pulling a male co-

25   worker's arm hair and touching the co-worker's arm, but denied pinching his nipples. Sahagun

26   Depo. 92:4.

27        Nguyen, on the other hand, testified that she organized a birthday party for a HACM

28

                                                    23

1    employee in 2009 that featured strippers, but that event took place at a local tavern and does not

2    appear to have been funded by HDC/HACM or organized by Warren or other management level

3    employees. Nguyen Depo. 37:16-38:18. Nguyen was further asked at the deposition about a picture

4    of her bare chest, which was in Sears' possession and which Nguyen contends that she never texted

5    to Sears. Nguyen Depo. 44:14-45:12, 46:1-47:8. Sahagun testified that she had not previously seen

6    this picture of Nguyen. Sahagun Depo. 92:22-93:12.

7            The Court finds that none of the evidence in the record creates a genuine issue of material

8    fact with regard to HDC's decision to terminate Sears on sexual harassment grounds for two

9    reasons. First, Sears' conduct was much more severe than that of Nguyen or Sahagun. Taking the

10   evidence in the light most favorable to Sears, Sahagun testified that she gave hugs to co-workers,

11   touched a male co-worker's arm, and pinched a male co-worker's arm hair. Nguyen testified that

12   she helped organize an off-site birthday party for a former co-worker at a local tavern, and the

13   party involved strippers. None of these actions clearly violates HDC's Sexual Harassment Policy.

14   HDC's Sexual Harassment Policy states that sexual harassment can include "visual conduct such as

15   leering," "sexual innuendo," "sexual jokes," and "graphic verbal commentaries about an

16   individual's body." In contrast, Sears' conduct, as stated in the CSI reports, runs afoul of this

17   Policy. Warren Supp. Decl. Ex. W. Sears reportedly took photos of a woman's chest, made

18   repeated comments about a temporary employee's breasts, threw candy into female co-worker's

19   cleavage, and stared at a co-worker's chest as she was walking up the stairs. Warren Decl. Ex. D.

20   All of Sears' actions took place in the workplace, *see id.*, whereas Nguyen's organization of the

21   birthday party—which is the most plainly sexual behavior introduced by Sears—explicitly took

22   place off-site. Nguyen Depo. 37:16-38:18. Accordingly, the conduct of Nguyen and Sahagan was

23   not similar to that of Sears. *Vasquez*, 349 F.3d at 641 (requiring similar conduct to establish

24   disparate treatment).

25           Second, Sears' inappropriate conduct implicated not only HDC itself, but also an outside

26   HDC business partner. Reed Decl. ¶ 2. Reed, an executive for property management company John

27   Stewart Company, alleged that Sears made "very inappropriate and unprofessional comments"

28

United States District Court
For the Northern District of California

24

Case No.: 11-CV-1876-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT

regarding a John Stewart Company female employee's body. Reed Decl. Ex. A. Reed stated that he told Sears that his comments were inappropriate, and he also reported this incident to HACM staff. *Id.* Reed reported that other John Stewart employees at the meeting felt uncomfortable because of Sears' comments. *Id.* Sears offers no evidence to refute the serious charges raised in Reed's email.

HDC's evidence indicates that Sears' behavior not only created a threatening atmosphere in the workplace, but also represented HDC poorly in its dealings with partners. Sears introduces no evidence to establish that Warren's reliance on the CSI report and Reed's email, among other factors, in making her decision to terminate Sears was mere pretext. The Court further notes that failure to take the sexual harassment allegations raised in the CSI reports and in Reed's email and the CSI report could have opened HDC to liability under Title VII. *See Swenson v. Potter*, 271 F.3d 1184, 1192 ("If the employer fails to take corrective action after learning of an employee's sexually harassing conduct, or takes inadequate action that emboldens the harasser to continue his misconduct, the employer can be deemed to have 'adopt[ed] the offending conduct and its results, quite as if they had been authorized affirmatively as the employer's policy.'"). The Court thus holds that Sears has failed to create a genuine issue of material fact as to HDC's decision to terminate Sears due to sexual harassment complaints.

c)      **Biased Investigation**

Finally, Sears challenges the impartiality of the CSI investigation into HDC in September 2010, an investigation that was prompted by Sears' belief that he was met with a "hostile and discriminatory work environment and was not provided the tools to adequately do [his] job." Sears Opp. Decl. ¶ 19. Sears asserts that his beliefs about bias and partiality "were confirmed" when a second investigation was conducted and resulted in a finding that Sears engaged in inappropriate sexual comments and behavior. *Id.*

However, the record points to the opposite conclusion. The CSI interviewers, not HDC employees, were the ones who prompted the additional investigation into Sears' allegedly making sexually inappropriate comments. Torres Decl. ¶ 3. Specifically, the first CSI report indicates that Sahagun stated that Sears "demeans women" and that Sears "is [not] a worthy representative of the

25

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    agency because of his inappropriate comments." *Id.* Moreover, as discussed above, CSI's first

2    investigation reached even-handed conclusions, substantiating some of Sears' complaints. Torres

3    Decl. Ex. A. For example, the first CSI report found that Warren did take away Sears' personal

4    keys to his desk, and issued him a HDC cell phone, instead of reimbursing him for work-related

5    usage of his personal cell phone. Warren Decl. Ex. C. The report clearly outlined Sears' complaints

6    and HDC's responses to each claim, and provided employee interviews to substantiate CSI's

7    conclusions. *Id.*

8         CSI's report of the second investigation on Sears' sexual harassment claims also appeared

9    to be fair. CSI's report indicated that one of the employees who made the sexual harassment

10   allegations was reluctant to discuss the subject because she "felt bad" for Sears and "did not want

11   to get him in trouble." Torres Decl. Ex. B. However, Sears mischaracterizes CSI's conclusion at

12   the end of the second investigation by stating that "[CSI] found no evidence of sexual harassment,

13   and that there were no complaints of sexual harassment." Opp. at 11. In fact, the CSI report states,

14   "[CSI concludes] that Sears has made inappropriate comments of a sexual nature as recorded in the

15   written statements of [Sears' two female co-workers]." Torres Decl. Ex. B, at 19.

16        CSI's even-handed and well-substantiated reports give no indication of bias. Rather, the

17   report provides a reliable assessment of Sears' performance at HDC, and Warren reasonably

18   concluded that, based on the CSI reports, Sears' conduct amounted to sexual harassment as defined

19   by HDC's Sexual Harassment Policy. ECF No. 298-2 ("Warren Supp. Decl.") ¶ 2; Warren Decl. ¶

20   21.[7] Specifically, HDC's Sexual Harassment Policy states that sexual harassment can include

21   "visual conduct such as leering," "sexual innuendo," "sexual jokes," and "graphic verbal

22   commentaries about an individual's body"— all behaviors that are consistent with the allegations

23   contained in the CSI reports. Warren Supp. Decl. Ex. W. Sears does not introduce any evidence to

24   indicate collusion between CSI and HDC or bias on the part of CSI, and thus, has not demonstrated

25

26   ───────────────
     [7] Sears seems to make the argument that CSI was somehow in collusion with HDC. Sears Opp.
27   Decl. ¶ 19. However, Sears argues in his Opposition that CSI "repeatedly informed" Starla Warren
     that there were no complaints of sexual harassment, and Sears asserts that CSI and Warren
28   disagreed as to Sears' sexual harassment allegations. Opp. at 11. Sears' own argument appears to
     contradict his allegations of bias in CSI's investigation. *Id.*

Case No.: 11-CV-1876-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT

1    a genuine issue of material fact as to his bias claims in the CSI investigation. *See Johnson*, 2012

2    WL 2917944, at *8.

3          Accordingly, for the reasons discussed above, HDC's motion for summary judgment is

4    GRANTED as to Plaintiff's FCA retaliation claim.

5          **B.      Supplemental Jurisdiction**

6          Sears' FCA claim is the only claim that presents a federal question. Having granted

7    summary judgment on that claim, the Court must determine whether to exercise supplemental

8    jurisdiction over Sears' remaining state law claims under 28 U.S.C. § 1367(c)(3). Where "all

9    federal-law claims are eliminated before trial, the balance of factors to be considered under the

10   pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point

11   toward declining to exercise jurisdiction over the remaining state-law claims." *Sanford v.*

12   *MemberWorks, Inc.,* 625 F.3d 550, 561 (9th Cir. 2010) (quoting *Carnegie–Mellon Univ. v. Cohill*,

13   484 U.S. 343, 350 n.7 (1988)). Because that is the case here, the balance of factors points toward

14   declining to exercise jurisdiction over Sears' remaining claims, which are all based on state law,

15   and the Court DISMISSES Sears' remaining claims without prejudice.

16         **C.      Leave to Amend**

17         On March 7, 2014, Sears filed a Motion for Leave to File a Fourth Amended Complaint.

18   *See* ECF No. 264. In his Motion, Sears seeks to add a state law defamation claim against HDC, and

19   to re-add Starla Warren as a named defendant to the defamation claim. *Id.* at 3. The Court DENIES

20   Sears' Motion for Leave to File a Fourth Amended Complaint, because the Court has already

21   declined to exercise supplemental jurisdiction over Sears' state law claims. Filing a Fourth

22   Amended Complaint to add additional state law claims would therefore be futile.

23   **IV.   CONCLUSION**

24         For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment

25   as to Sears' False Claims Act claim. The Court declines to exercise supplemental jurisdiction over

26   Sears' remaining claims, which are all based on state law, pursuant to 28 U.S.C. § 1367(c)(3) and

27

28

Case No.: 11-CV-1876-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT

**United States District Court**
For the Northern District of California

therefore DISMISSES these claims without prejudice. Finally, the Court DENIES Plaintiff's

Motion for Leave to File a Fourth Amended Complaint. The Clerk shall close the case file.

**IT IS SO ORDERED.**

Dated: April 7, 2014

LUCY H. KOH
United States District Judge

United States District Court
For the Northern District of California

Case No.: 11-CV-1876-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT